The **HOME INSURANCE COMPANY,**
**Plaintiff–Appellant,**

v.

**COOPER & COOPER, LTD., et al.,**
**Defendants–Appellees.**

**No. 88–3389.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1989.

Decided Nov. 13, 1989.

---

John J. Lynch, Donald M. Haskell, Daniel P. Caswell, Haskell & Perrin, Chicago, Ill., for plaintiff-appellant.

Ronald R. Peterson, Jenner & Block, John B. Kalish, Kalish & Associates, Chicago, Ill., Thomas Davis, Zion, Ill., David R. Brown, Arkin & Brown, River Forest, Ill., Green & Holmstrom, Lake Forest, Ill., Marvin Glassman, Rabens, Formusa & Glassman, Stacy Baygood, Small Business Admin., Philip E. Howard, Chicago, Ill., Harry Cooper, Pompano Beach, Fla., David Sokolow, Mundelein, Ill., for defendants-appellees.

David P. Leibowitz, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for Cooper & Cooper, Ltd.

Before COFFEY and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Attorney Lawrence M. Cooper embezzled from accounts held by his firm, Cooper & Cooper, Ltd., of which he was sole shareholder. For his sins he is doing time, and his firm has been cast into bankruptcy—a fitting dénouement, for Cooper stole money he held as trustee in other people's bankruptcies. Cooper & Cooper employed 12 other lawyers, and to protect their interests (as well as his own), Cooper sought malpractice insurance from The Home Insurance Company. The application form asked: "Does any lawyer [in the firm] know of any circumstances, act, error or omission that could result in a professional liability claim against him or his predecessors in business?" On behalf of the firm, Cooper answered "No." A truthful answer would have led any (sane) insurer to balk, but relying on Cooper's lie Home issued a "claims made" policy providing $1 million of coverage ($500,000 per occurrence) for the period April 18, 1986, to June 18, 1987. During that time Cooper's crimes came to light; he and his firm filed bankruptcy petitions.

Home commenced an adversary proceeding in the law firm's bankruptcy, naming as defendants Cooper, the twelve other attorneys employed by the firm, and the plaintiffs in two suits filed in state court (one against Cooper and the other against both Cooper and associate Elliott Dunn). The insurer sought a declaratory judgment that the policy of insurance is invalid because of Cooper's deceit. Bankruptcy Judge Ginsberg held that Cooper's lie vitiated the policy with respect to Cooper's delicts, whether the plaintiffs named him or the firm; the court concluded that the other 12 lawyers (and the firm, in the event of vicarious liability) were entitled to coverage. The district judge affirmed.

■ Cooper & Cooper's bankruptcy is ongoing; the order is not "final" in the traditional sense, and under 28 U.S.C. § 158(d) an appeal lies in a bankruptcy case only from a "final decision". We asked the parties for supplemental briefs on appellate jurisdiction and the jurisdictional problems discussed below. After considering these submissions, we conclude that the declaratory judgment wrapped up a dispute that would be a stand-alone case outside of bankruptcy; actions to determine the validity and coverage of a policy of insurance are common. So the decision was "final" in the practical sense that term takes in bankruptcy law. E.g., *In re Morse Electric Co.*, 805 F.2d 262 (7th Cir.1986); *In re Berke*, 837 F.2d 293 (7th Cir.1988). Appellate jurisdiction is secure; subject-matter jurisdiction is dubious.

A policy of insurance is an asset of the estate, and a request to determine its validity with respect to the debtor is a "core proceeding" over which a bankruptcy judge has jurisdiction. Home wanted to resolve more than its entitlements *vis-à-vis* Cooper & Cooper, however. It named as parties the firm's 12 associates and the plaintiffs in two tort suits pending in state court. The only apparent basis of subject-matter jurisdiction is 28 U.S.C. § 157(c), which provides:

(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed

findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

Congress enacted § 157(c) in 1984 in response to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held that bankruptcy judges, lacking the tenure and salary protections of Article III, may not adjudicate contract and tort claims arising under state law. Home's request for a declaratory judgment settling the rights of Cooper & Cooper's employees and of plaintiffs in tort cases unrelated to the law firm's bankruptcy would fall within *Marathon* unless the new § 157(c) provides for jurisdiction in the bankruptcy court, and is constitutional as so applied.

■ A controversy is not "related" to the bankruptcy within the meaning of § 157(c) unless its resolution "affects the amount of property available for distribution or the allocation of property among creditors". *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987). See also *In re Kubly*, 818 F.2d 643 (7th Cir.1987); *In re Kilgus*, 811 F.2d 1112, 1117–18 (7th Cir. 1987). We have read § 157(c) narrowly not only out of respect for Article III but also to preserve the jurisdiction of state courts over questions of state law involving persons not party to the bankruptcy. Overlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of its assets among creditors. Although the request for declaratory relief concerning the employees of Cooper & Cooper and the plaintiffs in state court has a

nexus with the bankruptcy—in the sense that it would be convenient, and promote consistency, to resolve all questions concerning the policy at one go—it does not necessarily have a financial effect on the estate (or the apportionment among its creditors).

■ "Relatedness", even if present, is not enough to permit a bankruptcy judge to issue a decision binding unless reversed on appeal. Anything less than a de novo decision by an Article III judge leaves the *Marathon* problem. Under § 157(c)(1) bankruptcy judges make not decisions but recommendations to the district judge, so that the initial decision comes from an Article III officer, cf. *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (system of recommendations subject to de novo review is constitutional); alternatively the district judge may refer a proceeding on the parties' consent, § 157(c)(2), which effectively waives the entitlement to the benefits of an initial Article III decisionmaker. See *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037 (7th Cir.1984) (28 U.S.C. § 636(c), which allows parties to consent to final decision by a magistrate, complies with Article III). Both branches of the statute give the leading role to the district judge, who makes the initial decision (§ 157(c)(1)) or decides whether to accept the parties consent to referral (§ 157(c)(2)).

■ So far as we can tell, the district judge exercised neither function. The bankruptcy judge did not transmit recommendations, followed by de novo review; he entered a final decision, reviewed by appeal. All would be well if the district judge had referred the case on consent under § 157(c)(2), but there was no reference, and consent, if any, was presented only to the bankruptcy judge. The bankruptcy judge asked for briefs concerning jurisdiction and held that parties who did not respond had consented. Under Bankruptcy Rules 7008 and 7012, which went into force on August 1, 1987, only written consent suffices. Perhaps acquiescence will do for earlier cases such as ours, as

the bankruptcy judge concluded. See *Daniels–Head & Associates v. William M. Mercer, Inc.*, 819 F.2d 914, 919 (9th Cir.1987). Perhaps not; silence is not a solid basis for an inference of consent, and even actual consent before the bankruptcy judge cuts the district judge out of the process. Express consents filed with the district judge may be rejected; consent inferred from silence in the bankruptcy court changes the locus of the decision as well as the method of resolving the question. There is a further problem with treating silence as assent: not all of the parties appeared before the bankruptcy judge. Home's complaint names Cooper and his 12 associates plus the plaintiffs in two state actions. Only one of the two sets of state-court plaintiffs, and three of the twelve associates (Dunn not among them), appeared at the hearing during which the bankruptcy judge announced that failure to protest amounted to consent. The silence of a missing party is thin support for a conclusion that the party abandoned its entitlement to a decisionmaker holding office under Article III. Silence continues in this court. Only one set of state-court plaintiffs has filed a brief. Cooper, the trustee of Cooper's estate in bankruptcy, the twelve associates, the trustee of the Cooper & Cooper estate, and the plaintiffs in the second state case have not filed papers.

Knotty statutory and constitutional questions should not be resolved on the basis of facts visible only through haze in the record. It is better to remand so that the district court may decide explicitly whether to refer the case to the bankruptcy court under § 157(c)(2), if indeed the resolution of the policy's application to the associates and the state-court plaintiffs has a potential effect on the estate—another factual question on which the record is silent.

Remand is essential even with respect to the request for a declaratory judgment concerning the application of the policy to Cooper & Cooper—the core issue to which the rest may be related. Home issued a "claims made" policy, which expired on June 18, 1987. Unless a claim under the policy was made before then, Home is off the hook, and the validity of the policy is irrelevant to the Cooper & Cooper bankruptcy. In its supplemental brief, Home represented that "the firm Cooper & Cooper ha[s] not actually been named as a defendant in any lawsuit." If it has not been named, it is hard to see how Home and Cooper & Cooper have a live controversy, for the policy expired more than two years ago.

■ At oral argument counsel for Home said that Cooper & Cooper's trustee made claims, before the policy expired, on every matter Cooper & Cooper had ever handled. If the trustee had reason to believe that the firm's work in a given case would lead to liability, it was entitled under the policy to inform the insurer within the period of coverage and so ensure indemnity if the potential came to pass. An effort to lodge claims on everything, to extend indefinitely the coverage of a 15–month policy, has no similar effect; it is merely vexatious. Nothing we have found in the record demonstrates that the trustee had a basis for his extravagant claims. Federal jurisdiction cannot be created by groundless assertions, feigned issues, or collusive joinder. See 28 U.S.C. § 1359. Unless Cooper & Cooper faces liability on account of *real* claims made by June 18, 1987, there is no need to decide whether this policy of insurance is void, and therefore no core bankruptcy dispute to which the remainder of the declaratory judgment action may be related.

Potential liability for the associates might translate into liability for Cooper & Cooper, which could both breathe life into the adversary proceeding and help to show that everything is "related" to the bankruptcy. If an associate should be found liable and have a right of indemnity from the firm but no insurance, Cooper & Cooper would have a new obligation. If the policy is valid and Home pays, it would be subrogated to that claim and be a creditor. Yet either effect on the estate is possible only if the associates—whose contingent claims make them the estate's "creditors" for purposes of bankruptcy law, see 11 U.S.C. § 101(4), (9)—have filed by the bar date. Our tour through the record did not

encounter claims by the associates. Whether there are such claims, and whether, if not, there is some other way in which the validity and scope of the policy could affect the estate, are questions the district court should address in the first instance.

The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion. If the district court concludes that it has a case or controversy over which there is statutory subject-matter jurisdiction, any further appeal will return to this panel for decision on the merits without the need for fresh briefs on that question.