**In re SPAULDING & COMPANY, Debtor.**

**SPAULDING & COMPANY, Plaintiff,**

**v.**

**Gordon BUCHANAN, Jr., Defendant.**

**Bankruptcy No. 89 B 6426.
Adv. No. 89 A 608.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

March 2, 1990.

**690**

Edward A. Berman, Berman, Roberts & Kelly, Chicago, Ill., pro se.

David E. Cohen, Cohen & Krol, Chicago, Ill., for Spaulding & Co.

M.I. McMahon, Jr. and J.P. Coleman, Chicago, Ill., for Buchanan.

## MEMORANDUM OPINION ON THIRD–PARTY DEFENDANT'S MOTION TO DISMISS

JACK B. SCHMETTERER, Bankruptcy Judge.

Spaulding & Company ("Debtor") is a debtor-in-possession under Chapter 11 of the Bankruptcy Code. Debtor filed this adversary complaint (the "Adversary Complaint") against Gordon Buchanan, Jr. ("Buchanan"). In the Complaint, Debtor alleges that a security interest and convey-

ance of property in favor of Buchanan was a preference under 11 U.S.C. § 547(b) and should be set aside. Subsequently, Buchanan filed a third-party complaint (the "Third–Party Complaint") against Berman, Roberts & Kelly ("BRK"), Debtor's former counsel, seeking indemnification and other relief. BRK has moved to dismiss the third-party complaint. For reasons set forth below, that motion is granted.

## UNDISPUTED FACTS

On June 1, 1987 Debtor executed a note (the "Note") for approximately $2.1 million in favor of Buchanan. Debtor alleges that the Note was executed to evidence certain payments that Buchanan had previously made on Debtor's behalf to First National Bank of Chicago and Drexel Burnham Lambert, Inc. in April and May of 1987. On June 1, 1987, to secure the Note Debtor also entered into a security agreement ("the Security Agreement") which granted Buchanan a security interest in Debtor's inventory and accounts receivable. Stewart S. Peacock ("Peacock"), Debtor's President, personally guaranteed payment of the Note by Debtor.

On December 11, 1987 Buchanan filed a complaint in the Circuit Court of Cook County against both Debtor and Peacock seeking to collect under the Note and/or Peacock's guaranty. Buchanan subsequently amended his complaint to seek certain injunctive relief. That action is still pending.

On November 4, 1988 Buchanan attempted to perfect the security interest granted in the Security Agreement by filing a UCC–1 financing statement covering Debtor's inventory and accounts receivable. Shortly thereafter on November 21, 1988, Buchanan filed an involuntary petition against Debtor under 11 U.S.C. § 303.

On February 3, 1989 Debtor and Buchanan reached a settlement agreement (the "Settlement Agreement") and jointly petitioned this court to dismiss the involuntary petition against Debtor. Under the Settlement Agreement, Debtor was required to turn over all collateral covered by the Security Agreement to Buchanan. In addi-

tion, Debtor agreed to indemnify Buchanan for any loss resulting from either a material inaccuracy in the representations made by it in the Security Agreement or Debtor's failure to perform under any provision of the Settlement Agreement. Settlement Agreement § 10. Among Debtor's warranties was its representation that it held "good and marketable title to all collateral." Id. § 1. Buchanan in turn agreed to pay Debtor's attorneys' fees of $50,000 to BRK. These fees were initially to be paid into an escrow account.

After reviewing the Settlement Agreement and conducting a hearing (following appropriate notice to the creditors), this court entered an order dismissing the involuntary bankruptcy petition on February 8, 1989. Pursuant to the Settlement Agreement, Debtor has since transferred its inventory (approximately 875 pieces of jewelry) to Buchanan. Buchanan denies that Spaulding's receivables were ever assigned to him.

In early March of 1989 Debtor filed a motion (later labeled a counterclaim) in the Circuit Court for Cook County seeking specific performance of the Settlement Agreement. Shortly thereafter BRK moved to intervene in the state court proceedings and also separately sued Buchanan. BRK alleged in those proceedings that it is a third-party beneficiary of the Settlement Agreement, and that Buchanan breached certain obligations owed to BRK under that Agreement for non-payment of the promised $50,000.

On April 17, 1989 Debtor filed a voluntary petition in bankruptcy in this court. On July 5, 1989 Debtor filed the instant Adversary Complaint. Count I alleges that Buchanan is an "insider" who perfected his security interest within one year prior to Debtor's bankruptcy, and asserts that the security interest should be set aside as a preference under 11 U.S.C. § 547(b). Count II seeks to recover under 11 U.S.C. § 542 the inventory and accounts receivable allegedly transferred to Buchanan. In its Second Amended Answer, Buchanan asserts as an affirmative defense that through the execution of the Settlement Agreement, Debtor waived its right to assert that Buchanan's security interest was a preferential transfer.

On October 5, 1989 Buchanan filed his Third–Party Complaint against BRK. He seeks indemnification from BRK for any loss that Buchanan incurs should Debtor be able to set aside the transfer of its inventory (and alleged transfer of its accounts receivable) to Buchanan. Buchanan's theory of liability is that because BRK asserted in its state court lawsuit that it was a third-party beneficiary of the Settlement Agreement, BRK also assumed Debtor's obligations under the Settlement Agreement, including the duty to indemnify Buchanan for any loss he incurred from the breach of the Settlement Agreement. Further, Buchanan asserts that Debtor's preference action constitutes a breach of the Settlement Agreement, thereby activating Debtor's and therefore BRK's obligations under that agreement.

## DISCUSSION

Buchanan asserts that this court has subject matter jurisdiction over the Third–Party Complaint under 28 U.S.C. § 1334(b) and core jurisdiction under 28 U.S.C. § 157(b)(2)(A) & (O). Section 157(b)(2)(A) and (O) provides, respectively, that "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the creditor or debtor ... relationship" are core proceedings in which a bankruptcy judge may enter final orders and judgments. *See* 28 U.S.C. § 157(b)(1). Buchanan also alleges that this court has ancillary and pendent jurisdiction over the cause of action alleged in his Third–Party Complaint. BRK has not challenged this court's subject matter jurisdiction, but it is this court's obligation independently to assure that such jurisdiction exists. *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776 (7th Cir.1986).

### A. *Jurisdiction Under 28 U.S.C. § 1334*

■ The subject matter jurisdiction of United States District Courts over bankruptcy matters is set forth in 28 U.S.C.

§ 1334.[1] This section provides that the district court has exclusive jurisdiction over all cases under Title 11, and nonexclusive jurisdiction over all proceedings arising under Title 11, arising in a case under Title 11 or "related to" a case under Title 11. The threshold inquiry in this case is whether the Third–Party Complaint falls within the bankruptcy jurisdiction outlined in § 1334(b).

The Third–Party Complaint does not arise under Title 11. The Fifth Circuit has explained that "Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *In re Wood,* 825 F.2d 90, 96 (5th Cir.1987). Buchanan asserts a right of indemnification against BRK that is derived from BRK's alleged status as a third-party beneficiary of the Settlement Agreement. This asserted cause of action is not based on a statutory right conferred by the Bankruptcy Code, but rather on state contract law.

Similarly, the Third–Party Complaint does not arise in a proceeding under Title 11. This clause:

> seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless would have no existence outside of bankruptcy.

Id. at 97 (emphasis in original). Buchanan is seeking indemnification under the Settlement Agreement for any losses incurred as a result of Debtor's preference action based on 11 U.S.C. § 547. Although this specific indemnification action is a response to cause of action based on substantive rights conferred on Debtor under Title 11, the third-party action is by no means an incident to the administration of the bankruptcy case. Further, as discussed below, the third-party action has no immediate or necessary impact on Debtor's bankruptcy estate.

The final category included in § 1334(b) is "related to" jurisdiction. The Seventh Circuit addressed the scope of this category in *In re Xonics, Inc.,* 813 F.2d 127 (7th Cir.1987). Specifically, the court stated that a dispute is "related to" the bankruptcy when "it affects the amount of property available for distribution or the allocation of property among creditors." Id. at 131; *Home Insurance Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746, 749 (7th Cir.1989). *See In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988) (noting that the Seventh Circuit formulation of the "related to" test "may deny jurisdiction in cases where the dispute is 'conceivably' related to the bankruptcy estate, but that relationship is remote.")

*Xonics* involved a dispute between two creditors over the proceeds of debtor's receivables in which both creditors held security interests. The receivables were being held by a third-party receiving agent. The receiving agent was to hold the proceeds only until the two creditors informed it as to the respective share to which each creditor was entitled. The two creditors initially reached an agreement as to the appropriate allocation, but one of the creditors later asserted that the other creditor had made affirmative misrepresentations and that the agreement was unenforceable. During the midst of the dispute, the debtor's plan of confirmation was confirmed and pursuant to the plan the receivables were abandoned to the two creditors.

The Seventh Circuit reasoned that originally the receivables were property of the estate and that the bankruptcy court had

---

**1.** The district court is authorized to refer all matters within the jurisdictional grant of 28 U.S.C. § 1334 to the bankruptcy judges for the district. 28 U.S.C. § 157(a). In this jurisdiction all such matters have been referred pursuant to the General Order of the United States District Court for the Northern District of Illinois of July 10, 1984. *See* Local District Rule 2.33. For purposes of determining whether a matter falls within the bankruptcy jurisdiction outlined in § 1334, as opposed to a bankruptcy judge's authority to enter final judgments and orders, it is not necessary to distinguish between the "arising in," "arising under" and "related to" categories. *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987). *See also In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988). (The inquiry is first whether federal jurisdiction existed in district court and then whether the bankruptcy court exercised only those powers constitutionally available to it.).

jurisdiction to determine the competing interests of the two creditors in that estate property. *Xonics,* 813 F.2d at 131. This jurisdiction, however, ceased once the property was abandoned upon confirmation of the plan.

> The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. It extends no further than its purpose. That two creditors have an internecine conflict is of no moment, once all disputes about their stakes in the bankrupt's property have been resolved.... [I]t is the relationship of dispute to estate, and not of party to estate, that establishes jurisdiction.

Id. The Seventh Circuit, however, remanded the matter to the district court because it could not determine whether the amount each of the creditors retained from the receivables would impact the amount of their unsecured claims against the debtor's estate, and ultimately the allocation of this estate. Id. at 132. If this impact did occur, then "related to" jurisdiction existed.

Under this standard Buchanan's complaint for indemnification against BRK is not "related to" a proceeding in bankruptcy. *See In re John Peterson Motors, Inc.,* 56 B.R. 588, 591 (Bankr.D.Minn.1986) (action for indemnification against a third party for losses incurred in Debtor's preference action was not "related to" debtor's bankruptcy). *Cf. In re Stockert Flying Service, Inc.,* 74 B.R. 704, 707–08 (N.D.Ind. 1987) (plaintiff-creditors' suit against debtor's attorneys for mishandling estate assets was a core proceeding because it was inextricably linked to the bankruptcy case.). Even if Buchanan is successful in this cause of action, it has no direct impact on either Debtor's estate, Buchanan's claim in bankruptcy, or BRK's claim in bankruptcy.

The Third–Party Complaint essentially alleges that the heart of the Settlement Agreement was the transfer of Debtor's inventory and accounts receivable to Buchanan. If the Settlement Agreement does not bar Debtor's preference action and the transfer of inventory (and alleged transfer of accounts receivable) is set aside as a preference, Buchanan wants to recover from BRK any damages he incurs. These damages if due could conceivably include the difference between the value of the property transferred to Buchanan and what Buchanan would receive from his claim against Debtor in the ongoing bankruptcy. Buchanan has filed a proof of claim in Debtor's case for an amount exceeding $2 million related to the Note. If the Settlement Agreement bars the preference action then Buchanan will satisfy his claim by keeping the inventory and pursuing his proof of claim for any deficiency. If Debtor can set aside the transfer of property to Buchanan then the direct consequences to Buchanan will be: (1) he will follow through on his existing proof of claim which covers the entire amount of the indebtedness owed by Debtor, and (2) he will pursue his claim for indemnification against BRK for the loss incurred from the preference action, namely the difference between the amount retained by Buchanan if the preference action fails and the amount received by Buchanan pursuant to his proof of claim if it doesn't. The Third–Party Complaint therefore does not directly affect Buchanan's claim in bankruptcy. Rather it is a remedy that Buchanan will pursue to attempt to recover any loss he incurs if the Settlement Agreement does not bar the preference action.

The impact of the Third–Party Complaint on BRK's claim is also at most indirect. If the Settlement Agreement holds up and bars Debtor's preference action, then under that agreement BRK is entitled to collect its fees from Buchanan. If the Settlement Agreement does not bar the preference action, then BRK may have a claim against Debtor in the Chapter 11 case for the services it provided in the earlier bankruptcy proceeding. This claim, however, is not directly impacted by Buchanan's third-party indemnification action. Again, it is the enforceability of the Settlement Agreement, not the Third–Party Complaint, that will immediately impact BRK's claim against Debtor's bankruptcy estate.

It is conceivable that continuation of the Third–Party Complaint in this court could indirectly affect the allocation of Debtor's

property among its creditors. This would happen only if (1) the Settlement Agreement does not bar the preference action, (2) the transfer is set aside as a preference, (3) Buchanan is successful in its indemnification theory against BRK, and (4) BRK is successful in a cause of action over against Debtor for its loss to Buchanan through the indemnification action. In other words Buchanan's successful pursuit of its indemnification action against BRK might result in BRK filing a proof of claim against Debtor to reflect this loss. More precisely, if the third-party action proceeds either here or in state court, BRK might file a contingent claim against Debtor for reimbursement of any recovery by Buchanan against it. This scenario would not impact the amount of the allowable claims[2] against Debtor, but could impact the eventual allocation of Debtor's estate among Buchanan, BRK, and other creditors. Cf. *Fietz*, 852 F.2d at 457.

As of yet, however, BRK has not filed a proof of claim in Debtor's case in response to the Third–Party Complaint or for any other purpose. Many factors go into a creditor's decision whether to file a proof of claim and this court cannot assume that such a proof of claim will be filed. Accordingly, at the present time the four-step scenario outlined above is so indirect and remote that this court cannot conclude that the results of Buchanan's third-party claim for indemnification against BRK would affect the size or allocation of Debtor's estate. If Buchanan pursues this cause of action in state court and BRK eventually does file a contingent claim here for reimbursement from Debtor, it may be necessary to revisit this issue. However, at this time there is no "related to" jurisdiction over the cause of action set forth in the Third–Party Complaint.

In terms of judicial economy it might well be more efficient for this court to decide the matters raised in the Third–Party Complaint. It is indirectly predicated on the cause of action raised in the Adversary Complaint over which this court has jurisdiction. The Seventh Circuit, however, has cautioned that neither efficiency nor a belief that Congress "envisioned the comprehensive administration of bankruptcy cases" satisfy the relatedness standard. *Home Insurance*, 889 F.2d 746; *In re Kubly*, 818 F.2d 643, 645 (7th Cir.1987).

> Overlap between the bankrupt's affairs and another dispute is insufficient [to confer jurisdiction] unless its resolution also affects the bankrupts' estate or the allocation of its assets among creditors. Although the request for declaratory relief ... has a nexus with the bankruptcy—in the sense that it would be convenient, and promote consistency, to resolve all questions concerning the [enforceability of the insurance] policy at one go—it does not necessarily have a financial effect on the estate (or the apportionment among its creditors).

*Home Insurance*, 889 F.2d at 749. *See also Kubly*, 818 F.2d at 645 ("Courts must be particularly careful in ascertaining the source of their power, lest bankruptcy courts displace state courts for large categories of disputes in which some party ... may be bankrupt.")

### B. *Pendent Party Jurisdiction*

■ Having determined that Buchanan's third-party claim for indemnification does not fall within the subject matter jurisdiction conferred by 28 U.S.C. § 1334, the final basis raised in the Third–Party Complaint for exercising jurisdiction is "pendent party" jurisdiction. Pendent party jurisdiction was recently defined by the Supreme Court as "jurisdiction over parties not named in any claim that is independently cognizable by the federal court." *Finley v. United States*, —— U.S. ——, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989). The basic theory of such jurisdiction is that once a district court acquires jurisdiction over a case or controversy, as an incident to deciding the case before it, it may exercise jurisdiction over matters and parties raised by the case over which the court

---

**2.** Contingent claims for reimbursement are disallowed under 11 U.S.C. § 502(e)(1)(B). At the point such a claim is no longer contingent, then the claim is deemed to have arisen pre-petition. 11 U.S.C. § 502(e)(2).

would not have jurisdiction were the matters raised independently. 6 Wright, Miller & Kane, *Federal Practice and Procedure* Civil 2d § 1444 at 316–17 (1990). In this case, the underlying cause of action is Debtor's preference action against Buchanan which arises under 11 U.S.C. § 547 and over which this court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157. The issue is whether Buchanan's third-party claim for indemnification against BRK can be resolved by this court as a claim that is pendent to the underlying preference action and over a party, BRK, as to which this court has no independent basis for jurisdiction.

A number of complicated issues are raised by the assertion of pendent party jurisdiction in any context, but particularly by a bankruptcy court. In this particular case, however, it is not necessary to address them. Even assuming for the sake of the discussion that a bankruptcy court can exercise pendent party jurisdiction[3] and that this fact situation satisfies both the constitutional[4] and statutory requirements[5] for the assertion of such jurisdiction, the decision to exercise pendent party jurisdiction is still within the discretion of the trial judge. *United Mineworkers v. Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139 ("pendent jurisdiction is a doctrine of discretion, not of plaintiff's right").

In this case the court finds that it would be inappropriate to exercise such jurisdiction, even assuming that it exists. Buchanan has raised the Settlement Agreement as a defense to Debtor's preference action. The specific issue raised by this defense is whether Debtor, by executing the Settlement Agreement in the earlier proceedings involving the involuntary petition, waived its entitlement to pursue a preference action when it later filed a voluntary petition in bankruptcy. The Third–Party Complaint raises much different issues. The issues raised by it are whether filing the preference action constitutes a breach of the Settlement Agreement and whether BRK as an alleged third-party beneficiary of the agreement is liable under the indemnification provisions contained therein. At this juncture, it is inappropriate for this court to become immersed in these issues that do not affect the bankruptcy estate and are pure questions of state law and contract construction.

## CONCLUSION

The Third–Party Complaint is dismissed for lack of subject matter jurisdiction.

**3.** A number of bankruptcy courts have held that they have the power to exercise pendent claim and pendent party jurisdiction. *See, e.g., In re Direct Satellite Communications, Inc.,* 91 B.R. 5 (Bankr.E.D.Pa.1988); *In re Coral Petroleum, Inc.,* 62 B.R. 699, 704 (Bankr.S.D.Tex.1986).

**4.** Article III, § 2 of the United States Constitution provides in part that "[t]he Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, [or] the Laws of the United States." The constitutional basis for the assertion of such jurisdiction was explained in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966), a pendent-claim case:

Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim "arising under [the] ... Laws of the United States ...," U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must

have substance sufficient to confer subject matter jurisdiction on the court.... The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that they would ordinarily be expected to try them all in one judicial proceeding, then assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole. (emphasis in original).

**5.** In *Finley,* the Supreme Court emphasized that in pendent party cases, in contrast to pendent claim cases, it should not be presumed that Congress intended the specific statutory grants of jurisdiction to be interpreted as authorizing courts to invoke pendent jurisdiction to the maximum extent possible under the Constitution. Id., 109 S.Ct. at 2007. "Beyond this constitutional minimum, there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim." *Finley,* 109 S.Ct. at 2007.