**In re HA–LO INDUSTRIES, INC. et al., Debtors and Debtors– In–Possession.**

**HA2003 Liquidating Trust, Plaintiff,**

**v.**

**Carramore Limited, et al., Defendants.**

**Carramore Limited, et al., Third– Party Plaintiffs,**

**v.**

**John R. Kelley, Jr., et al., Third– Party Defendants.**

Bankruptcy No. 02 B 12059.
Adversary No. 02 A 01601.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 1, 2005.

Neal L. Wolf, Todd L. Padnos, LeBoeuf, Lamb, Greene & MacRae, San Francisco, CA, for Debtors.

*MEMORANDUM OPINION ON THIRD–PARTY DEFENDANTS' MOTION TO DISMISS THIRD–PARTY PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION*

JACK B. SCHMETTERER,
Bankruptcy Judge.

The subject motion and this Adversary proceeding relate to the bankruptcy case of HA2003 Liquidating Trust ("Plaintiff Trust"), successor to HA–LO Industries, Inc. ("HA–LO" or "Debtor") under its confirmed Chapter 11 Bankruptcy Plan.[1] The Adversarial Complaint and related Third–Party Complaint involve HA–LO's purchase of a company called Starbelly.com ("Starbelly"). HA–LO filed this Adversarial Complaint seeking to recover stock and cash that it paid to purchase Starbelly. Defendants/Third–Party Plaintiffs ("Third–Party Plaintiffs") filed a Third–Party Complaint seeking indemnification from HA–LO officers and directors for alleged fraud and negligent misrepresentation in connection with the Starbelly sale. Third–Party Defendants filed a motion to dismiss Third–Party Plaintiffs' Complaint for lack of subject matter jurisdiction.

For reasons stated herein, the motion of the Third–Party Defendants to dismiss for lack of subject matter jurisdiction will be granted.

*BACKGROUND AND PROCEDURAL HISTORY*

On June 30, 2001 the debtor HA–LO and certain of its subsidiaries sought relief

---

1. This Adversary was reassigned from Judge Doyle to Judge Schmetterer on May 24, 2004.

under Chapter 11 of the Bankruptcy Code, 11 U.S.C. 101, et seq.

### Complaint

On October 22, 2002, HA–LO filed said Adversary proceeding alleging that it did not receive reasonably equivalent value for the purchase price of Starbelly.com. HA–LO alleges that it paid $240 million in cash and marketable stock and seeks to avoid and recover a portion of the stock and cash under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 et seq. and 11 U.S.C. § 544(b) from recipients of that transaction.

On June 29, 2004, an Order was entered in the related bankruptcy case confirming a Plan of Liquidation ("Plan"). The Plan established a liquidation trust, HA2003 Liquidating Trust ("Trust") to liquidate the assets and property of the Debtor. Pursuant to the Plan, the Trust became the Plaintiff herein. (*See* Second Am. Plan of Reorganization & Order Confirming Second Am. Plan of Reorganization.)

By Final Pretrial Order entered on November 16, 2004, this Adversary proceeding has been set for trial on designated dates over the months of November and December 2005.

### Third–Party Complaint

On April 28, 2003, Defendants and Third–Party Plaintiffs, J.P. Morgan Partners (SBIC) LLC, f/k/a Chase Venture Capital Associates, L.P., et al. filed a First Amended Third–Party Complaint alleging that HA–LO officers and directors committed federal securities fraud, common law fraud and negligent misrepresentation in connection with the Starbelly sale. (Third–Party Compl. ¶ 2).

The Third–Party Complaint named John R. Kelley, Jr. ("Kelley"), Gregory J. Kilrea ("Kilrea"), Marshall J. Katz ("Katz"), Linden D. Nelson ("Nelson"), and Lou Weisbach ("Weisbach") as Third–

Party Defendants (collectively "Third–Party Defendants"). Third–Party Defendants are former officers and directors of HA–LO. The Third–Party Complaint originally was brought by ten Third–Party Plaintiffs. Eight of the ten original Third–Party Plaintiffs have settled with HA–LO leaving only two remaining: Carramore Limited and Zebra Investments LP. (Third–Party Defs. Opening Mem. at 2).

Third–Party Plaintiffs alleged as Defendants in the Adversary proceeding that HA–LO was solvent, adequately capitalized and able to pay its debts upon the merger with Starbelly. (Third–Party Pls. Resp. at 4). Third–Party Plaintiffs allege that they formed these beliefs because the Third–Party Defendants repeatedly represented to them that HA–LO was solvent, adequately capitalized, financially sound, and had ample means to acquire and integrate Starbelly and to pay the full acquisition price. (Third–Party Compl. ¶ 3). If HA–LO proves the allegations in its Complaint, Third–Party Plaintiffs claim that the representations made to them by the Third–Party Defendants were materially false and they are thus entitled to indemnification based on negligent misrepresentation.

On March 1, 2004 Third–Party Defendants Kilrea, Weisbach, and Nelson filed proofs of claim based on alleged rights to indemnification by HA–LO. The proofs of claim seek indemnification from HA–LO from any judgment entered against them in the Third–Party Complaint. On June 9, 2004 HA–LO filed an objection to these claims. Third–Party Plaintiffs allege that the "Third–Party Defendants' claim for contractual and legal indemnification is automatic for liabilities arising out of services performed as an officer and director of HA–LO." (Third–Party Pls. Resp. at 12). Third–Party Defendants, however, claim that "none of the three Third–Party De-

fendants who filed proofs of claim have 'automatic' claims for indemnification against HA–LO's estate based on potential damages awarded to the Third–Party Plaintiffs." (Third–Party Defs. Reply at 8).

On April 20, 2004 Judge Doyle (to whom this Adversary proceeding was originally assigned) approved a settlement agreement ("Settlement") entered into between Kelley and HALO dated March 31, 2004. Pursuant to the terms of the Settlement, the Liquidating Trust agreed to create a reserve of $1.5 million out of any proceeds received from Zurich American Insurance Company ("Zurich") and to pay Kelley's reasonable costs of defense on covered claims out of such reserve to the extent that such costs of defense would accrue after entry of the order approving Settlement. (Settlement Agreement Article 5 A). According to the Settlement, Kelley is a defendant in several pending suits. (*See* Settlement Agreement at 1). Pursuant to the Settlement:

> If the proceeds of the Zurich D & O Insurance policy are or become unavailable to pay Kelley's reasonable costs of defense as a result of the Liquidating Trust's collection of such proceeds, or otherwise as a result of the operation of this Settlement Agreement, the Liquidating Trust agrees that it will create a reserve of $1.5 million (the "Zurich Reserve") out of any proceeds it receives from Zurich and will pay Kelley's reasonable costs of defense on covered claims out of such Zurich Reserve, to the extent such costs of defense accrue after the Effective Date.

(Settlement Agreement Article 5 · A). According to the Third–Party Defendants, $648,924.90 in defense costs have already been paid out of the reserve as of May 25, 2005. (Third–Party Defs. Mem. at 5). The Settlement also provides:

The Liquidating Trust's obligation to maintain a reserve or pay reasonable costs of defense will cease after the later of (i) the final resolution (including any appeals) of the JPMP Action and the Shareholder Action; or (ii) after the end of any twelve month period during which the SEC has taken no new action to cause Kelley to incur more than *de minimis* defense costs. To the extent permitted by law, Kelley shall inform the Liquidating Trust of any SEC action which causes him to incur defense costs within 30 days of incurring such costs. In no event shall the Liquidating Trust's obligations under this Article 5 extend beyond thirty months from the Effective Date.

(Settlement Agreement Article 5 C).

The question of whether subject matter jurisdiction exists over the Third–Party Complaint was raised in open court, *sua sponte*, at a hearing on May 13, 2005. The Third–Party Defendants then moved to dismiss the Third–Party Complaint for lack of subject matter jurisdiction.

### DISCUSSION

Bankruptcy Judges comprise a unit of the District Court under 28 U.S.C. 151. Subject matter jurisdiction over bankruptcy matters lies in the District Courts under 28 U.S.C. 1334. District courts have the authority to refer all matters within the jurisdictional grant of 1334 to the Bankruptcy Judges in the district. 28 U.S.C. 157(a). In this District, all such matters have therefore been referred pursuant to Local District Rule 15(a).

A Bankruptcy Judge may issue final orders and judgments in "core" proceedings pursuant to 157(b)(2). A Bankruptcy Judge may also submit proposed findings of fact and conclusions of law in "related" but non-core proceedings under 157(c)(1). In determining jurisdiction, Bankruptcy

Judges must first determine whether jurisdiction exists under 1334 and then determine what authority may be exercised under 157.

Section 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

### "Core" Jurisdiction Does Not Lie over this Proceeding

 No parties here contended that "core" jurisdiction existed. "Core" jurisdiction does not exist over the Third–Party Complaint because it does not "arise under" the Bankruptcy Code or "arise in" a bankruptcy proceeding. "Core" jurisdiction "is limited to questions that arise during the bankruptcy proceeding and concern the administration of the estate, such as whether to discharge a debtor." *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir.1994). The Seventh Circuit has adopted the following definition of a "core" proceeding: "A proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature could arise only in the context of a bankruptcy case." *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990) *citing In re Wood*, 825 F.2d 90, 97 (5th Cir.1987). "Core" jurisdiction is not present in this dispute between two nonparties to the bankruptcy. *See Zerand*, 23 F.3d at 162 (finding that section 1334(b) could not possibly be applicable to a dispute between two nonparties to the bankruptcy proceeding).

### "Related To" Jurisdiction Does Not Exist Because There Would Be No Effect on the Estate Regardless of Who Would Prevail Under the Third–Party Complaint

 The Seventh Circuit has construed the concept of "related to" narrowly out of respect for Article III of the U.S. Constitution and to preserve the jurisdiction of state courts over state law questions involving non-parties to the bankruptcy. *Home Insurance Co. v. Cooper & Cooper, Ltd., et al., (In re Home Insurance Co.)*, 889 F.2d 746, 749 (7th Cir.1989). A primary purpose for applying "related to" jurisdiction when it exists under 1334(b) is so that other legal claims by and against the debtor can be determined in the same forum. *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161–162 (7th Cir.1994) *citing In re Xonics*, 813 F.2d 127, 131 (7th Cir.1987). "A secondary purpose is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankruptcy estate." *Id.*

 The dispute between Third–Party Plaintiffs and Third–Party Defendants can only be "related to" the HA–LO bankruptcy if its resolution "affects the amount of property available for distribution or the allocation of property among the creditors." *In re Home Insurance Co., supra*, 889 F.2d at 749. The Seventh Circuit has held that "overlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of its assets among creditors." *Id.*

 The recognition of "related to" allows bankruptcy courts to exercise jurisdiction over suits to which the debtor may not be a party, but which affect the amount of property in the bankruptcy estate. *In re Xonics, supra*, 813 F.2d at 131. The dispute in the subject Third–Party Complaint involves two non-debtors. The outcome of this litigation would only determine which party will ultimately be responsible in the event that the Third–Party Plaintiffs are found liable in the underlying Adversary proceeding. The dis-

tribution of funds to the creditors and the Plan would remain unaffected. Therefore, "related to" jurisdiction does not exist under 1334 to entertain the Third–Party Complaint.

Third–Party Plaintiffs argue that outcome of the Third–Party Complaint will eventually affect distribution of property in the estate to creditors. In doing so, they attempt to distinguish this case from the reasoning in *In re Spaulding & Co.*, 111 B.R. 689 (Bankr.N.D.Ill.1990) (Schmetterer, J.) and *Official Creditors' Comm. of Prods. Liab. & Personal Injury Claimants v. Int'l Ins. Co. (In re Pettibone Corp.)*, 135 B.R. 847 (Bankr.N.D.Ill.1992) (Schmetterer, J.), and the authorities on which those cases relied. In *Spaulding*, the debtor brought a preference action against a creditor who then filed a third-party complaint against debtor's former counsel seeking indemnification. *Spaulding*, 111 B.R. at 690. It was found that because the potential claim for indemnification did not have an impact on debtor's bankruptcy estate, "related to" jurisdiction could not be exercised. *Id.* at 692. Relying on the Seventh Circuit standard for finding "related to" jurisdiction, it was noted:

> The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. It extends no further than its purpose. That two creditors have an internecine conflict is of no moment, once all disputes about their stakes in the bankrupt's property has been resolved … [I]t is the relationship of dispute to the estate, and not of party to estate, that establishes jurisdiction.

*Id. citing In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987).

In *Pettibone*, the debtor sued defendant insurer for making settlement payments to personal injury claimants. *Pettibone*, 135 B.R. at 849. Defendant then sued another insurer alleging that it too was liable since it undertook to defend debtor's personal injury claims. It was found that subject matter jurisdiction was lacking because the only effect of a successful cross-claim would be to change the ultimate source of any damages that must be paid. *Id.* at 850. The dispute between the defendant and the additional insurer could only be "related to" the bankruptcy if its resolution affected "the amount of property available for distribution or the allocation of property among the creditors." *Id. quoting Home Insurance Co. v. Cooper & Cooper, Ltd. et al., (In re Home Insurance Co.)*, 889 F.2d 746, 749 (7th Cir.1989). Because a resolution of the dispute would not change the distribution to creditors, "related to" jurisdiction was not present.

The facts in this case are indistinguishable from *Spaulding* and *Pettibone* and the Seventh Circuit authorities relied on. Similar to the facts in *Spaulding* and *Pettibone*, if these Third–Party Plaintiffs are successful in their indemnification claim against Third–Party Defendants, there will be no effect on HA–LO's bankruptcy estate. The amount of money available for distribution to creditors will not change depending on who prevails. Therefore, "related to" jurisdiction does not exist because this litigation has no impact on estate property or the confirmed Plan.

### The Settlement Agreement Between HA–LO and Kelley Does Not Confer "Related To" Jurisdiction

■ Third–Party Plaintiffs assert that since HA–LO is funding Kelley's defense costs of the Third–Party Complaint, such defense expense reduces the amount of assets available to creditors should there be anything left of the defense fund, thus creating "related to" subject matter jurisdiction under 28 U.S.C. 1334(b). (Third–Party Defs. Resp. at 2). Third–Party Plaintiffs also assert that HA–LO's fund-

ing of Kelley's defense costs in the Third–Party Complaint has been and will continue to deplete estate property. (Third–Party Defs. Resp. at 7).

"Related to" jurisdiction does not exist because of the settlement agreement between HALO and Kelley for several reasons.

First, the Settlement is not involved in the merits of the underlying Third–Party Complaint. The Settlement only provides that Kelley's reasonable costs of defending various actions will be paid out of a reserve. The basis for the Third–Party Complaint does not rest on any aspect of the Settlement. The terms and conditions of the Settlement are not being litigated. Rather, Third–Party Plaintiffs contend that if they are liable to the Debtor, then Third–Party Defendants are also liable. There is no direct connection between the Third–Party Complaint for indemnification and the approved Settlement. While settlements approved by the court can give rise to "related to" or even core jurisdiction, that occurs when those settlements are in issue. In this case, the Settlement is not at issue.

Second, the reserve is not used solely to indemnify Kelley for reasonable costs of defending the Third–Party Complaint. The reserve will not terminate upon resolution of the Third–Party Complaint. Rather, HA–LO has an obligation to maintain the reserve to cover Kelley's additional costs of defending other suits. (*See* Settlement Agreement Article 5 C).

Finally, the possibility that the Third–Party Complaint will settle, thus preventing Kelley from incurring additional costs of defending this case, is insufficient to find "related to" jurisdiction. Third–Party Plaintiffs argue that should this case settle prior to trial, the amount of money available for distribution to creditors might increase from a surplus in the reserve because Kelley would stop incurring additional defense costs. (Third–Party Defs. Resp. at 9). However, the possibility of this case settling is mere speculation. In addition, should this case settle prior to trial, the amount of funds in the reserve would not then become property of the estate. Pursuant to the Settlement, Kelley will continue to be indemnified out of the reserve for reasonable costs of defense in other actions.

Assuming arguendo that funds will exist in the settlement reserve after the Third–Party Complaint and all other potential actions for which Kelley is to be indemnified, the estate may have a claim to the funds. However, Third–Party Plaintiffs cannot rely on the remote possibility that if excess funds then will exist in the reserve and the estate may then have a claim on such funds to find that "related to" jurisdiction thereby exists. Such a possibility is too tenuous to confer jurisdiction. It is also inconsistent with the narrow interpretation of "related to" jurisdiction adopted by the Seventh Circuit where it has been reiterated that the effects on the bankruptcy estate and other creditors do matter. Although there may be some highly contingent and tenuous possibility of future connection between the Third–Party Complaint and the Debtor's estate, such connection is insufficient for it to be "related to" the bankruptcy case. A connection that is more metaphysical than concrete does not meet the test in this Circuit.

### *"Related To" Jurisdiction Does Not Exist on the Basis of Proofs of Claim Filed by Certain Third–Party Defendants*

Third–Party Plaintiffs argue that because certain Third–Party Defendants filed proofs of claim for contractual and legal indemnification against the HA–LO estate and those claims will affect the allocation of property among creditors, "relat-

ed to" jurisdiction exists. (Third–Party Defs. Resp. at 2). Third–Party Plaintiffs argue that the proofs of claim filed by Weisbach, Kilrea, and Nelson for indemnification from HA–LO will have a real, tangible, and direct impact on the distribution of property to creditors. (Third–Party Defs. Resp. at 11). Thus, based on the filed proofs of claim, Third–Party Plaintiffs assert that "related to" jurisdiction exists over their pleadings in this Adversary proceeding.

Third–Party Plaintiffs rely on Judge Sonderby's opinion in *In re Salem Mills, Inc.* to support this argument. 148 B.R. 505 (Bankr.N.D.Ill.1992). In *Salem*, it was found that the third-party complaint "related to" the underlying bankruptcy even though the Debtor was no longer a litigant. *Id.* Defendant filed a complaint against debtor asserting indemnification claims regarding any liability arising from other state court actions in which the debtor and the defendant were co-defendants. Judge Sonderby found that "related to" jurisdiction existed because the defendant filed a proof of claim based on the indemnification agreement.

*Salem* can be distinguished from this case for several reasons. The defendant in *Salem* filed a proof of claim based on an actual indemnification agreement against the debtor. *Id.* at 509. In this case, there is no allegation of an indemnification agreement that exists for claims of the three Third–Party Defendants. Therefore, none of the three Third–Party Defendants who filed their claims appear to have "automatic" claims for indemnification. Indeed, HA–LO has objected to each claim seeking potential right to indemnification. (Third–Party Def. Reply Mem. at 8).

In *Salem*, Judge Sonderby noted that "only in cases where the original indemnitor holds property of the estate against which liability can be offset does the action

unquestionably impact upon the assets of the estate." *Id.* at 508. In this case, such an impact does not exist. The amount of funds used to indemnify Kelley have been set aside in a settlement reserve. If Kelley's reasonable costs of defense exceed the amount allocated in the settlement reserve, there is nothing in the settlement agreement to indicate that his future expenses would be paid by using other property in the estate.

■ Third–Party Plaintiffs cannot rely on the possibility that three Third–Party Defendants may have a timely filed claim for indemnification to find "related to" jurisdiction in this Adversary proceeding. In addition to the objections filed to the filed claims, HA–LO's Second Amended Plan of Reorganization provided a possible impediment:

CONTRACTUAL INDEMNIFICATION OF DIRECTORS, OFFICERS AND EMPLOYEES. Except for the Debtor's contractual obligations to indemnify Marc Simon (which obligations were previously approved by the Bankruptcy Court and which shall remain in effect), the contractual obligations of the Debtors to indemnify any person or entity serving at any time on or prior to the Petition Date as one of their directors, officers or employees by reason of such person's or entity's service in such capacity shall be deemed and treated as executory contracts that are rejected by the Debtors pursuant to the Plan and sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

(Second Am. Plan of Reorganization & Order Confirming Second Am. Plan of Reorganization Article VIII 8.3). It is clear from the Plan, as well as HA–LO's objection to the claims, that the possibility that claims for indemnification will be paid out of the estate is highly speculative. More-

over, it is contingent on loss by Defendants at trial and then their recovery against Third–Party Defendants in some action. "The mere possibility of some effect from an indemnification claim is not enough to pose 'related to' jurisdiction." *City of Joliet v. Bank One, N.A.,* 210 B.R. 556 (Bankr.N.D.Ill.1997) (Schmetterer, J) citing *In re Spaulding,* 111 B.R. 689 (Bankr. N.D.Ill.) *aff'd,* 131 B.R. 84 (N.D.Ill.1990); *In re Emerald Acquisition Corp.,* 170 B.R. 632 (Bankr.N.D.Ill.1994); *In re VideOcart, Inc.,* 165 B.R. 740 (Bankr.D.Mass.1994); *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 482 (6th Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355, *reh'g denied,* 507 U.S. 1002, 113 S.Ct. 1628, 123 L.Ed.2d 186 (1993). While validity of the filed proofs of claim may be litigated some day, that provides no source for jurisdiction here. *See In re Xonics,* 813 F.2d 127, 131 (7th Cir.1987) (explaining that there is no jurisdiction to resolve all disputes between creditors of a bankrupt).

Third–Party Plaintiffs also attempt to distinguish this case from *Schwinn Cycling & Fitness v. Benonis (In re Schwinn Bicycle Co.),* 210 B.R. 747 (Bankr.N.D.Ill.1997) (Schmetterer, J.). "Related to" jurisdiction was not found in *Schwinn Bicycle Co.* where the Adversary complaint was neither a complaint by nor against the Debtor, and where the possibility that resolution of the dispute would affect the bankruptcy was subject to many contingencies. *Id.* at 755. In *Schwinn Bicycle Co.,* the party claiming indemnification did not file a proof of claim and was not entitled to an "automatic indemnification claim." *Id.* In this case, the Third–Party Plaintiffs argue that the filed proofs of claim are entitled to an automatic indemnification claim. (Third–Party Pls. Resp. at 12). However, there is no evidence to support that notion. The allegation that the claims are "automatic" is

weakened based on the clear language in the Plan and the objections filed against them. Assuming arguendo that Third–Party Defendants are entitled to some type of indemnification, such a highly contingent possibility of a future indirect impact on the estate does not give rise to the level of "related to" jurisdiction.

### Bankruptcy Courts Do Not Have the Power to Exercise Ancillary Jurisdiction

Third–Party Plaintiffs argue that because the Third–Party Complaint arises out of a common nucleus of operative facts as the Adversary proceeding, is logically dependent on the Adversary proceeding, and involves the same witnesses and evidence, ancillary jurisdiction should be asserted over the Third–Party Complaint. (Third–Party Pls. Resp. at 13). Bankruptcy courts, however, do not have the power to exercise ancillary jurisdiction. They are limited to the three types of jurisdiction specifically granted in 28 U.S.C. 157(a). *In re Doctors Hospital of Hyde Park, Inc.,* 308 B.R. 311, 318 (Bankr. N.D.Ill.2004) *citing Chapman v. Currie Motors, Inc.,* 65 F.3d 78, 81 (7th Cir.1995) (suggesting but not holding that bankruptcy courts cannot exercise supplemental jurisdiction); *In re Walker,* 51 F.3d 562, 569 (5th Cir.1995); *Simmons v. Ford Motor Credit Co., (In re Simmons),* 224 B.R. 879, 886 (Bankr.N.D.Ill.1998); *In re Fisher,* 151 B.R. 895, 899 (Bankr.N.D.Ill.1993); *In re Alpha Steel Co., Inc.,* 142 B.R. 465, 471 (M.D.Ala.1992).

The application of ancillary jurisdiction in the Seventh Circuit was discussed in *In re Conseco,* 305 B.R. 281 (Bankr.N.D.Ill. 2004). The *Conseco* court explained that the decision of the Seventh Circuit in *Zerand–Bernal Group, Inc. v. Cox* made no reference to the doctrine of ancillary jurisdiction. 158 B.R. 459 (N.D.Ill.1994). The *Conseco* opinion noted:

Without directly discussing ancillary jurisdiction, the court rejected the argument that the bankruptcy court's retention of jurisdiction over the issue was sufficient to confer jurisdiction, stating that "a court cannot write its own jurisdictional ticket." Thus, the court implicitly rejected the argument that a bankruptcy court may assert ancillary jurisdiction over controversies that fall outside the bounds of its jurisdiction under 157(a).

*Conseco*, 305 B.R. at 286. That opinion also addressed the decision in *Wieboldt Stores v. Schottenstein*, 111 B.R. 162 (N.D.Ill.1990). When the district court in *Wieboldt* held that it had ancillary jurisdiction to hear claims that were entwined with claims over which it had bankruptcy jurisdiction, the district court was only asserting that it had the jurisdiction to hear the claims. *Conseco*, 305 B.R. at 286, *citing Wieboldt*, 111 B.R. at 166. The *Conseco* court stated, "This court agrees that a district court can assert ancillary jurisdiction. But the question here is whether a bankruptcy court can assert ancillary jurisdiction, and the court concludes that the answer is no." *Conseco*, 305 B.R. at 286. Therefore, consistent with the limited jurisdiction given to bankruptcy courts, ancillary jurisdiction cannot be asserted over the Third–Party Complaint.

### *"Equity" Cannot Allow Ancillary Jurisdiction Be Exercised*

■■■■■ The Third–Party Plaintiffs argue also that "equity" dictates that jurisdiction be exercised over the Third–Party Complaint because they may have been prejudiced by the Third–Party Defendants' delayed challenge to jurisdiction causing the statute of limitations to have run on certain claims. (Third–Party Defs. Resp. 14). Despite any potential prejudice that the Third–Party Plaintiffs may have suffered, bankruptcy courts still do not possess the power to exercise ancillary jurisdiction. *See infra.* "A court cannot write its own jurisdictional ticket." *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir.1994). "Equity" and a court's view of fairness does not determine bankruptcy court jurisdiction; Congress does.

### *CONCLUSION*

For the reasons stated above, the motion of Third–Party Defendants' to dismiss Third–Party Plaintiffs' complaint for lack of subject matter jurisdiction is granted by separate order. All pending matters relating to the Third–Party Complaint, including the Motions for Summary Judgment on the Third–Party Claims and Response filed thereto, are dismissed, having been rendered moot by this decision.