HCFS BUSINESS EQUIPMENT CORPORATION, Plaintiff,

v.

LDI FINANCIAL SERVICES CORP., Defendant, Third party plaintiff,

v.

FINANCIAL NEWS NETWORK, INC., Third party defendant.

No. 91 C 143.

United States District Court, N.D. Illinois, E.D.

July 2, 1991.

Alan Norris Salpeter, Lillian K. Miller, Mayer, Brown & Platt, Chicago, Ill., for plaintiff.

Don R. Sampen, Martin, Craig, Chester & Sonnenschein, Charles L. Michod, Chicago, Ill., for defendant, third party plaintiff.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

On January 9, 1991, plaintiff, HCFS Business Equipment Corporation (HCFS), sued defendant, LDI Financial Services Corp. (LDI), in this court, asserting a claim against LDI for $1,083,708.43. On February 28, 1991, LDI filed an answer and also a third party complaint against Financial News Network, Inc. (FNN), claiming indemnification from FNN if LDI was liable to HCFS. FNN filed for protection under Chapter 11 in the Southern District of New York the following day and LDI sought to remove this case to Bankruptcy Court here as a first step toward moving the entire matter to Bankruptcy Court in New York. HCFS, not wanting its dispute with LDI intertwined with the reorganization of FNN, moved to sever the third party complaint, which obviously is automatically stayed, from its claims against LDI and also moved in Bankruptcy Court to remand the case to this court on the ground that a case cannot be removed from a district court to a bankruptcy court. HCFS correctly stated the law in this district. The Bankruptcy Court promptly ruled that the removal was ineffective, and LDI promptly moved in this court for a directed reference to the Bankruptcy Court here as the appropriate means for moving the matter to New York. HCFS opposes that motion. We are finally at a point, then, to determine whether or not HCFS' claims against LDI should become part of the FNN bankruptcy proceeding in New York. We do not believe that they should, and the motion for a directed reference is denied.

HCFS alleges that it made two loans to LDI, both secured by loan and security agreements. The loan documents attached to the complaint indicate that LDI borrowed the funds to purchase certain equipment which it, in turn, was to lease to FNN. FNN was to pay the lease installments directly to HCFS. The loan documents indicate, however, or so it could reasonably be alleged, that HCFS looked to LDI for protection of its security interests in the equipment, with LDI making numerous warranties and representations to HCFS; that LDI financed the equipment for use by FNN and looked to FNN to pay HCFS and for compliance with the various requirements of the security agreements; and that HCFS had no obligation to depend upon FNN's performance of its lease obligations to LDI. According to HCFS, FNN stopped paying and a subsequent audit of the leased equipment indicated that much of it is missing or claimed by other creditors. HCFS alleges that those events constitute a breach of LDI's obligations to plaintiff, and it calls upon LDI to pay.

LDI points out that the notes were non-recourse and that HCFS could look for payment of the notes only from FNN's lease payments, with whatever protection plaintiff might have being derived from the security agreements. That means, LDI contends, that FNN is "inextricably linked to the dispute between HCFS and LDI." It contends that HCFS' claims are an attempt to get around the non-recourse nature of the notes, the representations and warranties of LDI to HCFS being virtually identical to those of FNN to LDI. Further, it urges that resolution of its dispute with plaintiff will necessarily involve or be dominated by FNN records and the knowledge of FNN witnesses. Thus the progress of this litigation may well affect FNN's ability to reorganize. Finally, it urges that any recovery by HCFS against LDI will trigger an LDI claim against FNN, that entity being ultimately responsible, and thus will impact upon both the administration of that estate and the other creditors of that estate. The HCFS claims are, therefore, "re-

lated to" the FNN bankruptcy and should be there resolved.

■ The HCFS claims clearly are not core proceedings. Plaintiff does not seek to share in the bankrupt's estate nor does it here claim a direct interest in the security possessed or owned by FNN. The claims, at most, are related to the bankruptcy proceeding. They may well, however, be "related to" that proceeding within the meaning of 28 U.S.C. § 157(c)(1). Despite the Seventh Circuit's somewhat restrictive view of "related to," the relationship here goes beyond a nexus or a logical relationship to the bankruptcy proceeding (or, in the absence of more complete information about the estate in New York and the claims against that estate, it would so appear), because the administration of that estate requires a resolution of the LDI claims against FNN, and those claims are dependent upon a resolution of the HCFS–LDI dispute, and because the resolution of the HCFS–LDI dispute will directly impact upon the LDI claims against FNN assets and therefore the assets available for other creditors. *See In re Kubly*, 818 F.2d 643 (7th Cir.1987); *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987). The HCFS claims here are similar in many respects to the hypothetical claims by associates against the bankrupt in *Home Insurance Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 750 (7th Cir.1989), in the event there was no insurance, as the dispute can trigger new obligations against the estate.

■ But HCFS has demanded a jury. Regardless of the outcome of the current dispute over the propriety of a jury trial of core proceedings in bankruptcy, a "related to" jury case cannot be tried in bankruptcy. *UNR Industries, Inc. v. Continental Ins. Co.*, 623 F.Supp. 1319, 1333 (N.D.Ill.1985); *In re Reda, Inc.*, 60 B.R. 178, 182–83 (Bkrtcy.N.D.Ill.1986). The conclusion that its dispute with HCFS is related to the FNN bankruptcy gets LDI only halfway home, and that is not far enough. The motion for a directed reference is denied.

That does not, however, end the matter. HCFS wants to sever LDI's third party claims, fearful that the continuing linkage will somehow drag it into the FNN bankruptcy. LDI opposes, fearful of inconsistent results if the claims are severed and the facts respecting what has happened to the security are determined in different courts. We are somewhat uncertain about what impact severance or non-severance would have upon those concerns. If LDI's claims against FNN are not severed they languish here pursuant to the automatic stay while the HCFS–LDI dispute proceeds. We recognize that trial in one place promotes consistency, although that is not enough to move the HCFS–LDI dispute into bankruptcy court. *See Home Insurance*, 889 F.2d at 749. A failure to sever does not, however, advance that objective. Perhaps LDI will want to pursue its claims in the FNN bankruptcy (and perhaps HCFS may decide to pursue some claims there). Perhaps, though, LDI may wish to seek to persuade the bankruptcy court in New York to lift the automatic stay in order to pursue its claims here, the only way it can confidently hope to try the issues in one forum. But that decision is up to the bankruptcy court in New York when and if it is asked.