**UNITED STATES BRASS CORPORATION and Eljer Industries, Inc., Appellants,**

v.

**CALIFORNIA UNION INSURANCE COMPANY, Appellee.**

**and Related Bankruptcy Appeals.**

Bankruptcy Nos. 95 C 68, 95 C 67, 95 C 69, 95 C 70, 95 C 483 and 95 C 484. Adv. Nos. 94 A 1262, 94 A 1289 and 94 A 1328.

United States District Court, N.D. Illinois, Eastern Division.

July 10, 1996.

Michael D. Freeborn, Michael Todd Novak, Freeborn & Peters, Chicago, IL, for appellants.

Robert B. Millner, Sonnenschein, Nath & Rosenthal, Chicago, IL, for appellee.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Appellants United States Brass Corporation and Eljer Industries, Inc.[1] appeal from certain orders issued by the Bankruptcy Court for the Northern District of Illinois. In those orders, Bankruptcy Judge Ronald Barliant denied Brass's motion to transfer venue of six adversary proceedings to the Eastern District of Texas, and granted the motion of appellee insurance companies[2] to

---

1. The court refers to Appellant United States Brass Corporation as "Brass" and Appellant Eljer Industries, Incorporated as "Eljer." The court refers to Brass and Eljer collectively as "appellants" or (simply) "Brass."

2. The court refers to the appellee insurance companies as "appellees" or "insurers" or "insurance companies." They include Allstate Insurance Company, as successor in interest to Northbrook Excess & Surplus Insurance Compa-

.abstain from hearing the six proceedings. For reasons set forth below, this court affirms the orders of Judge Barliant in all respects.

## Background

Brass manufactures plumbing systems for residential properties, including the Qest polybutylene plumbing system ("Qest system" or "Qest"). Brass sold hundreds of thousands of Qest systems during the 1980s. Numerous homeowners, developers, builders and contractors sued Brass and Eljer in connection with alleged defects in the Qest system. Although Brass settled many of these lawsuits, a large number remain unresolved. The unwillingness of Brass's insurers to cover such claims caused Brass to file for bankruptcy protection in 1994 in the United States District Court for the Eastern District of Texas.

Almost a decade before the bankruptcy filing, in 1985, a predecessor of Brass and Eljer known as Household Manufacturing sued its primary insurer in federal court. The court granted summary judgment to Household Manufacturing, holding that all Quest system claims constituted a single "occurrence" under the relevant insurance policies. *Household Mfg., Inc. v. Liberty Mut. Ins. Co.,* No. 85 C 8519, 1987 WL 6611 (N.D.Ill. Feb. 11, 1987), *modified on other grounds,* 1987 WL 20137 (N.D.Ill. Nov. 16, 1987). In 1988, Eljer sued its primary insurer in federal court, and two excess insurers intervened. Over a strong dissent, the Seventh Circuit reversed the district judge, holding that under Illinois law the date of installation (rather than the date of malfunction) triggered insurance coverage for the Qest system. *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.,* 972 F.2d 805 (7th Cir.1992), *cert. denied,* 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 267 (1993).

The present appeal concerns six adversary proceedings—four first filed in state court and later removed to federal court, and two first filed in federal court.

**Four Adversary Proceedings Filed In State Court.** In 1991, one of Eljer's excess carriers sued Eljer in Illinois court, seeking a declaratory judgment that the insurer was not obligated to defend or indemnify Eljer for claims involving the Qest system. *Travelers Indem. Co. of Illinois v. Eljer Mfg., Inc.,* Adversary No. 94 A 1262, Appeal No. 95 C 68. In 1992, another excess carrier sued Eljer in Illinois court, seeking a similar declaration. *Gibraltar Casualty Co. v. Eljer Mfg., Inc.,* Adversary No. 94 A 1296, Appeal No. 95 C 70. In 1993, four insurance carriers sued Eljer and Brass on similar grounds in Illinois court, where their action was consolidated with the 1991 *Travelers* case. *National Surety Corp. v. Eljer Mfg., Inc.,* Adversary No. 94 A 1310, Appeal No. 95 C 69. In 1994, another insurer sued Brass on similar grounds in Illinois court. *California Union Ins. Co. v. Eljer Indus., Inc.,* Adversary No. 94 A 1309, Appeal No. 95 C 67. In 1994, Brass removed these four proceedings to the United States District Court for the Northern District of Illinois, where they were referred to the United States Bankruptcy Court and assigned to Judge Barliant. The only basis for federal jurisdiction over these four proceedings was 28 U.S.C. § 1334(b), which confers on federal district courts original but not exclusive jurisdiction over bankruptcy and bankruptcy-related proceedings.

**Two Adversary Proceedings Filed In Federal Court.** In July 1993, Brass sued eighteen insurance carriers in the United States District Court for the Northern District of Illinois, seeking declaratory relief and damages regarding Qest system insurance coverage. *Eljer Indus., Inc. v. Aetna Casu-*

ny; CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company; Constitution State Insurance Company; Employers Mutual Casualty Company; Federal Insurance Company; First State Insurance Company; Gibraltar Casualty Company; Granite State Insurance Company; Harbor Insurance Company; Hartford Accident & Indemnity Company; Highlands Insurance Company; Insurance Company of North America; International

Insurance Company; Lexington Insurance Company; National Surety Corporation; National Surety Corporation; National Union Fire Insurance Company of Pittsburgh, Pennsylvania; North River Insurance Company; Old Republic Insurance Company; Prudential Reinsurance Company; Royal Insurance Company; the Travelers Indemnity Company; the Travelers Indemnity Company of Illinois; and Zurich International (Bermuda) Ltd.

*alty & Sur. Co.*, originally No. 93 C 4320, then Adversary No. 94 A 1289, now Appeal No. 95 C 483. On May 9, 1994, Magistrate Judge Joan H. Lefkow recommended that District Judge Lindberg dismiss the case because Eljer failed to join indispensable parties, finding that joinder of such parties would destroy diversity jurisdiction. *Eljer Indus., Inc. v. Aetna Casualty & Sur. Co.*, 1994 U.S.Dist. LEXIS 6167 (N.D.Ill. May 9, 1994). Brass objected to this recommendation. On June 14, 1994, Brass moved to add the defendants that Judge Lefkow found indispensable. Conceding that "diversity of citizenship is wanting between Eljer and some or all of the additional parties," Brass noted that it recently filed for bankruptcy and that the district court could "now exercise jurisdiction over the additional defendants pursuant to 28 U.S.C. § 1334."[3] On June 22, 1994, without ruling on Judge Lefkow's recommendation of dismissal or Brass's motion to add additional parties, Judge Lindberg referred the case to the United States Bankruptcy Court for the Northern District of Illinois (as noted below).

In September 1993, one of Brass's insurers sued Brass in California state court, seeking declaratory relief regarding its Qest system coverage obligations. In October 1993, Brass removed the case to the United States District Court for the Central District of California. In March 1994, that court transferred the case to the United States District Court for the Northern District of Illinois. *California Union Ins. Co. v. Eljer Indus., Inc.*, originally No. 94 C 1540, then Adversary No. 94 A 1328, now Appeal No. 95 C 484. It was then consolidated with the 1993 *Aetna* action discussed in the preceding paragraph. In June 1994, District Judge Lindberg referred the consolidated *Aetna* and *California Union* cases to the United States Bankruptcy Court for the Northern District

of Illinois, where they were assigned to Judge Barliant.

In June 1994, Brass asked Judge Barliant to transfer the four adversary proceedings initiated in state court ("the four state proceedings") and the two adversary proceedings initiated in federal court ("the two federal proceedings") to the Bankruptcy Court for the Eastern District of Texas. At the same time, the insurance companies asked Judge Barliant to abstain from hearing all six proceedings and remand the four state court proceedings to state court.

Judge Barliant ruled in favor of the insurers. He rejected Brass's argument that the district court in Texas had exclusive jurisdiction over all six proceedings. He concluded that he had to abstain from hearing the four state proceedings under 28 U.S.C. § 1334(c)(2) (which provides for "mandatory abstention") and that he should abstain from hearing all six proceedings under 28 U.S.C. § 1334(c)(1) (which provides for "permissive abstention").[4] Brass now appeals from Judge Barliant's rulings.

### Analysis

This court will consider Judge Barliant's rulings in the order he made them, first examining the issue of exclusive jurisdiction, then turning to mandatory abstention, and finally considering permissive abstention. This court reviews Judge Barliant's factual findings for clear error and his legal conclusions *de novo*. *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir.1994) (citing *In re Wiredyne Inc.*, 3 F.3d 1125, 1126 (7th Cir.1993)).

## I. SECTION 1334(d) DOES NOT GIVE EXCLUSIVE JURISDICTION TO THE TEXAS DISTRICT COURT

■ Under 28 U.S.C. § 1334(d) ("Section 1334(d)"),

---

**3.** Plaintiffs' Motion for Leave to File a Second Amended Complaint to Add Additional Defendants in *Eljer Indus., Inc. v. Aetna Casualty & Sur. Co.*, No. 93 C 4320, docket 197, ¶ 6 (on file in the United States Bankruptcy Court for the Northern District of Illinois).

**4.** Judge Barliant issued his rulings from the bench on November 14, 1994 and December 1,

1994. Transcripts of the proceedings before Judge Barliant on those days appear in the Addendum to Brief of Certain Appellees, Tabs 1 and 2, respectively. The court will refer to Judge Barliant's rulings as "Barliant rulings, [date] at [page]." The formal orders implementing Judge Barliant's rulings appear in the Addendum to Brief of Certain Appellees, Tab 3.

The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

According to Brass, "property" includes lawsuits as well as real estate and personal property, so the district court where a bankruptcy case is pending has exclusive jurisdiction over all lawsuits of the debtor. In this case, Brass claims that the District Court for the Eastern District of Texas has exclusive jurisdiction over all lawsuits of Brass, including the six adversary proceedings at issue here.

Judge Barliant rejected Brass's Section 1334(d) "exclusivity argument." Barliant rulings, Nov. 14, 1994 at 2–3. He conceded that, generally speaking, "every cause of action that belongs to the debtor is property of the debtor and property of the estate." *Id.* at 3. However, he went on to state that to construe [Section 1334(d)] to give the Texas court exclusive jurisdiction over these adversary proceedings would be inconsistent with Sections 1334(b), 1452 and the venue provisions of Title 28 because it would require that the home court have exclusive jurisdiction over every proceeding, at least every proceeding in which the debtor or the estate were a plaintiff, and perhaps every other proceeding as well. *Id.* Brass appeals Judge Barliant's ruling.

Although the "exclusivity argument" is superficially appealing, it is clearly untenable. It is superficially appealing because, as Judge Barliant conceded, the bankruptcy laws generally define "property" broadly to include lawsuits. *Id.; see United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 (1983) (property of the estate includes causes of action). Notwithstanding the broad definition of property, every court that has considered the exclusivity argument posited by Brass has rejected it for the same reasons offered by Judge Barliant. *E.g., Amplifier Research Corp. v. Hart,* 144 B.R. 693, 696 (E.D.Pa.1992); *Merchants & Farmers Bank of Dumas, Arkansas v. Hill,* 122 B.R. 539, 547 (E.D.Ark.1990); *In re Continental Air Lines, Inc.,* 61 B.R. 758, 766 (S.D.Tex.1986). As Judge Bue explained in *Continental Air Lines,*

The presently accepted view is that … 28 U.S.C. § 1334(d) was intended to emphasize the end of the distinction between plenary and summary jurisdiction, and to establish both in personam and in rem jurisdiction, rather than to establish exclusivity over bankruptcy matters in the reorganization court. The exclusivity argument is unpersuasive because it would render the venue provisions of Title 28 virtually meaningless. Exclusivity could mean … that venue would not be proper in the only district with subject matter jurisdiction … while venue would be proper in a district which lacks jurisdiction.… Congress could not possibly have intended such a result when fashioning the jurisdiction and venue provisions of title 28.

*Id.* at 766 (footnote omitted); *see Merchants & Farmers Bank,* 122 B.R. at 547 (agreeing with Judge Bue); *Amplifier Research,* 144 B.R. at 696 (same).

The exclusivity argument is also unpersuasive because it is inconsistent with Section 1334(b), which states that "the district courts shall have original *but not exclusive* jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" (emphasis added). As noted in *Directory Int'l, Inc. v. Bates Mfg. Co.,* 91 B.R. 738 (N.D.Tex.1988), "[t]he same non-exclusivity in § 1334(b) that permits state courts to litigate state claims—notwithstanding the language of §§ 1334(a) and (d)—allows district courts other than the one in which the title 11 case is filed to adjudicate actions." *Id.* at 740.

Finding Brass's exclusivity argument untenable, the court affirms Judge Barliant's decision not to transfer the six adversary proceedings at issue to the bankruptcy court in Texas.

## II. SECTION 1334(c)(2) REQUIRES THAT THE BANKRUPTCY COURT ABSTAIN FROM HEARING THE FOUR STATE PROCEEDINGS

A district court must abstain from hearing certain "non-core" proceedings de-

scribed in 28 U.S.C. § 1334(c)(2) ("Section 1334(c)(2)" or "the mandatory abstention section"):

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under [title 11], *the district court shall abstain* from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).

In this appeal, it is undisputed that (1) the insurers made a timely motion for abstention, (2) the four state proceedings are based on state law, (3) the four state proceedings could not have been commenced in federal court absent bankruptcy jurisdiction, (4) the four state proceedings were commenced in Illinois state court, (5) the Circuit Court of Cook County is a state forum of appropriate jurisdiction. However, the parties dispute (A) whether the four state proceedings arise under title 11 or in a case under title 11 (*i.e.*, whether they are "core" proceedings), and (B) whether the four state proceedings can be timely adjudicated in state court.

**Core Proceeding.** The central question in this bankruptcy appeal is whether the four state proceedings are "core" proceedings or merely "related" proceedings. Core proceedings are proceedings that arise under title 11 or arise in a case under title 11. 1 *Collier on Bankruptcy* ¶ 3.01[2][b][ii] at 3–40 (1995). Non-core proceedings include proceedings that are merely "related" to a case under title 11, as well as proceedings that are entirely unrelated to a case under title 11 (*i.e.*, "civil proceedings which are not within the bankruptcy jurisdiction granted by section 1334 at all," *id.* ¶ 3.01[2][b][i] at 3–39 to 3–40). By definition, a related proceeding is a non-core proceeding, not a core proceeding. *Id.* ¶ 3.01[2][b][ii] at 3–40. As noted above, a bankruptcy court must—under certain delineated circumstances—abstain from hearing non-core proceedings. 28 U.S.C. § 1334(c)(2).

The fundamental distinction between core and non-core proceedings stems from *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which the Supreme Court "held that bankruptcy judges, lacking the tenure and salary protections of Article III, may not adjudicate contract and tort claims arising under state law." *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir.1989). In response to *Northern Pipeline*, Congress enacted a new jurisdictional scheme for the bankruptcy courts that distinguished between core proceedings, related proceedings, and unrelated proceedings. Under this scheme, bankruptcy courts may adjudicate core proceedings only. *Barnett v. Stern*, 909 F.2d 973, 979 (7th Cir.1990) (citing 28 U.S.C. § 157). Although bankruptcy courts may not adjudicate "related" proceedings (in the sense of entering judgment), they may propose findings of fact and conclusions of law to the district court. *Id.* (citing 28 U.S.C. § 157(c)(1)).

"The starting point for determining whether an action is a core proceeding is 28 U.S.C. § 157(b)(2), which contains a nonexclusive list of matters that are considered 'core proceedings.'" *Id.* at 979 (footnote omitted). The list does not explicitly include disputes over insurance coverage under state law, such as the four state proceedings at issue here. However, the list is non-exclusive and contains two "catch-all" provisions. Therefore, the court must apply a more general test "for determining when a matter that does not readily fit within the enumerated statutory categories is a core proceeding." *Id.* at 981. In the *Barnett* case, the Seventh Circuit adopted the general test first developed by the Fifth Circuit in an earlier case, *In re Wood*, 825 F.2d 90 (5th Cir.1987).

Under the *Wood* test, "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Barnett*, 909 F.2d at 981 (quoting *Wood*, 825 F.2d at 97). By contrast, a proceeding is non-core if it "does not invoke a substantive right created

by the federal bankruptcy law and is one that could exist outside of bankruptcy." (*Id.*) Although such a proceeding "may be related to the bankruptcy because of its potential effect, . . . it is [nonetheless] an 'otherwise related' or non-core proceeding." (*Id.*) In adopting the *Wood* test, the Seventh Circuit recognized that other courts espouse broader interpretations of core proceedings. *See Barnett,* 909 F.2d at 981 (citing cases from First and Second Circuits). But the Seventh Circuit concluded that "the approach of *Wood* and its progeny reflects most precisely the constitutional policy concerns expressed by the Supreme Court in *Marathon* and by Congress in the Bankruptcy Amendments and Federal Judgeship Act of 1984." *Id.*

Applying the *Wood* test to this bankruptcy appeal, it is clear that the four state proceedings are not core proceedings. First, the four state proceedings do not invoke substantive rights provided by federal bankruptcy law (unlike—for example—an action by the trustee to avoid a preference, *Wood,* 825 F.2d at 97). On the contrary, the four state proceedings invoke rights exclusively under state law. Second, the four state proceedings could exist outside of bankruptcy (unlike—for example—the filing of a proof of claim, *id.* at 97). Indeed, all four proceedings were filed and (to varying degrees) litigated in Illinois state courts before Brass filed for bankruptcy protection in 1994.

In an effort to blunt the force of *Wood* and *Barnett,* Brass cites a passage in *Home Ins. Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746 (7th Cir.1989)—a case that involved a malpractice insurance policy issued to a law firm on the basis of false statements made by a lawyer in the firm. When the firm went bankrupt, the insurer commenced an adversary proceeding in the law firm's bankruptcy, seeking a declaration that the malpractice insurance policy was void because it was obtained by fraud, naming as defendants the attorneys in the firm and other non-debtors. *Id.* at 748. The issue on appeal was whether the adversary proceeding was "related to" the bankruptcy case (making it proper for

the bankruptcy judge to submit proposed findings of fact and conclusions of law to the district court) or whether the adversary proceeding not related to the bankruptcy case at all (making it *im*proper for the bankruptcy judge to submit proposed findings of fact and conclusions of law). *Id.* at 749. In other words, the issue on appeal involved not the borderline between "core" and "related" proceedings but the borderline between "related" and "unrelated" proceedings.[5]

Although *Home Insurance* did not concern the borderline between core and related proceedings, the Seventh Circuit did make an isolated reference to that issue, stating that "[a] policy of insurance is an asset of the estate, and a request to determine its validity with respect to the debtor is a 'core proceeding' over which a bankruptcy judge has jurisdiction." Brass places great emphasis on this statement, but the statement does not displace the *Wood/Barnett* analysis discussed above. First, for reasons just explained, the statement in *Home Insurance* was dicta. Second, the statement was not supported by any analysis or any citation to authority. Third, the *Home Insurance* opinion was issued *before* the *Barnett* opinion, in which the Seventh Circuit adopted the *Wood* framework for distinguishing between core and related cases.

Even if the statement in *Home Insurance* were a viable rule, it would have to be limited to the specific facts of that case in light of later cases. In *UNR Indus., Inc. v. Continental Casualty Co.,* 942 F.2d 1101 (7th Cir. 1991), *cert. denied,* 503 U.S. 971, 112 S.Ct. 1586, 118 L.Ed.2d 305 (1992), a bankrupt manufacturer of asbestos sued its insurers to enforce their alleged obligations to the manufacturer. The Seventh Circuit stated that the dispute was "related" to the bankruptcy because the dispute "affect[ed] the amount of property available for distribution." *Id.* at 1103 (quoting *In re Xonics,* 813 F.2d 127, 131 (7th Cir.1987)). As noted above, a related proceeding cannot be a core proceeding. 1 *Collier on Bankruptcy* ¶ 3.01[2][b][ii] at 3–40

---

5. *See generally* 1 *Collier on Bankruptcy* ¶ 3.01[2][b][i] at 3–39 to 3–40 (1995) ("The battleground has been and will continue to be over the relationship among 'core proceedings,' civil proceedings which are not 'core proceedings,' and civil proceedings which are not within the bankruptcy jurisdiction granted by section 1334 at all.").

(1995). To the extent that the statement in *UNR* contradicts the statement in Home Insurance, the more recent and more central statement in *UNR* should prevail.

In any event, a careful reading of the cases suggests that *UNR* and *Home Insurance* do not contradict one another. *UNR* involved an action to enforce obligations under an insurance policy. It was undisputed that the debtor owned the policy; the only issue was the insurers' liabilities under the policies. By contrast, *Home Insurance* involved an action to determine whether an insurance policy was void *ab initio* because it was issued on the basis of false statements. As Judge Barliant pointed out, such an action "is equivalent to determining whether the debtor owns the policy." Barliant Rulings, Nov. 14, 1994, at 4. The instant bankruptcy appeal is closer to *UNR* than *Home Insurance.* Unlike *Home Insurance,* the instant bankruptcy appeal involves insurance policies whose validity is undisputed. Like *UNR,* the instant bankruptcy appeal involves actions to enforce obligations under those insurance policies. Thus, the conclusion that the four state proceedings at issue here are "related" rather than "core" is not only dictated by the *Wood* test adopted in *Barnett* but also makes sense under a careful reading of *Home Insurance* and *UNR.*

**Timely Adjudicate.** Having determined that the four state proceedings are related rather than core, the court turns to the question whether the four state proceedings can be timely adjudicated in state court. This issue is one of judicial discretion. *In re Georgou,* 157 B.R. 847, 851 (N.D.Ill.1993) (citing *In re Leco Enterprises, Inc.,* 144 B.R. 244, 251 (S.D.N.Y.1992)).

Judge Barliant found that the four state proceedings can be timely adjudicated in Illinois state court. Barliant Rulings, Nov. 14, 1994 at 5. This court agrees. As Judge Barliant pointed out, the Chancery Division of the Circuit Court of Cook County has already done substantial work in these proceedings. For example, Judge Richard Curry has ruled on cross motions for summary judgment in *Travelers Indem. Co. of Illinois v. Eljer Mfg., Inc.,* Adversary No. 94 A 1262, Appeal No. 95 C 68. Discovery was under

way in the other proceedings. For example, Judge Albert Green had ruled on cross motions to compel discovery in *Gibraltar Casualty Co. v. Eljer Mfg., Inc.,* Adversary No. 94 A 1296, Appeal No. 95 C 70.

Judge Barliant also found no reason to believe that the bankruptcy court in the Northern District of Illinois or the Eastern District of Texas could resolve the four state proceedings any faster than the Illinois courts. Barliant Rulings, Nov. 14, 1994 at 5. Again, this court agrees. As Judge Barliant explained, "[a] bankruptcy court would have to catch up to what the state court has already done, especially because the issues involved are complex state-law issues already addressed in the state court." *Id.*

### III. SECTION 1334(c)(1) ALLOWS THE BANKRUPTCY COURT TO ABSTAIN FROM HEARING THE SIX ADVERSARY PROCEEDINGS

■ Under 28 U.S.C. § 1334(c)(1) ("Section 1334(c)(1)"), a court may abstain from hearing a proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law." The Seventh Circuit has identified twelve factors that lower courts should consider in deciding whether to exercise "permissive abstention" under Section 1334(c)(1). *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 6 F.3d 1184, 1189 (7th Cir.1993) (citation omitted). The Seventh Circuit has advised that:

> Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative. At the same time, because section 1334(c)(1) is concerned with comity and respect for state law, whether a case involves unsettled issues of state law is always significant.

*Id.* (citations omitted).

Judge Barliant concluded that permissive abstention would apply to all six adversary proceedings, whether or not mandatory abstention applied to the four state proceedings. Barliant Rulings, Nov. 14, 1994 at 6, and Dec. 1, 1994 at 12. In reaching this

conclusion, Judge Barliant laid particular stress on the fact that the proceedings involved unsettled questions of state law. He noted that:

> the key issue is arguably unsettled and is best resolved by the Illinois courts rather than the federal courts. That the Seventh Circuit and the Illinois Appellate Court have reached different conclusions only highlights the importance of allowing the state-law issues to be decided in the state courts. Principles of federalism and comity are well-served by abstention.

Barliant Rulings, Nov. 14, 1995 at 6.

This court agrees with Judge Barliant that permissive abstention is appropriate here, since unsettled state-law issues are clearly present. In an early case involving the Qest system, the Seventh Circuit reversed the district judge and held that under Illinois law the date of installation (rather than the date of malfunction) triggers liability insurance coverage. *Eljer Mfg., Inc. v. Liberty Mutual Ins. Co.*, 972 F.2d 805 (7th Cir.1992), *cert. denied*, 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 267 (1993) (Posner, J.). This holding provoked a strong dissent by Judge Cudahy, who argued that the majority misconstrued the relevant Illinois caselaw. *Id.* at 814–17 (Cudahy, J., dissenting). Subsequent holdings by Illinois courts appear to confirm Judge Cudahy's view. In a case decided the year after *Eljer*, an Illinois appellate court expressly rejected the proposition that installation triggers liability insurance coverage in that case. *Diamond State Ins. Co. v. Chester–Jensen Co.*, 243 Ill.App.3d 471, 183 Ill. Dec. 435, 442–43, 611 N.E.2d 1083, 1090–91 (1st Dist.1993). Although the Illinois appel-

late court did not discuss *Eljer*, it vigorously criticized the Illinois case that *Eljer* relied on, *Marathon Plastics, Inc. v. Int'l Ins. Co.* [161 Ill.App.3d 452, 112 Ill.Dec. 816, 514 N.E.2d 479 (1987) ]. *See Diamond State*, 183 Ill.Dec. at 443, 611 N.E.2d at 1091.[6] Because the six adversary proceedings at issue here involve unsettled issues of state law, principles of comity and respect for state law clearly favor permissive abstention.

Several other factors identified by the Seventh Circuit in *Chicago, Milwaukee* favor permissive abstention. For example, state law issues clearly predominate over bankruptcy issues (second factor). Indeed, the six adversary proceedings involve the interpretation of insurance policies under state law only; there are no federal issues. In addition, there is a strong argument that Brass is engaged in forum shopping (tenth factor). Specifically, it seems that Brass is trying to have all its state-based claims adjudicated in federal courts bound by the Seventh Circuit's holding in *Eljer*, rather than in Illinois state courts, where Eljer's interpretation of Illinois law appears to carry less weight.

Another factor the court should consider in deciding whether to grant permissive abstention is "the jurisdictional basis, if any, other than 28 U.S.C. § 1334." *Chicago, Milwaukee*, 6 F.3d at 1189. This factor favors permissive abstention with respect to the four state proceedings, since there is no basis for federal jurisdiction other than 28 U.S.C. § 1334. However, this factor does not favor permissive abstention with respect to the two federal proceedings, since they were originally filed on the basis of diversity jurisdiction.[7]

---

**6.** The unsettled state of Illinois law in this area is apparent in more recent, unpublished opinions. For example, in *Moen, Inc. v. Allstate Ins. Co.*, No. 93 CH 11662 (Circuit Court of Cook County, Chancery Division, Oct. 23, 1995), Judge Braden expressly declined to follow the *Eljer* majority, noting that "under rulings of the Illinois Appellate Court for the First District, the mere installation of a defective product does not trigger coverage, as property damage". *Id.*, unpublished Summary Order dated Dec. 13, 1994; *see also Moen* (same case), transcript of proceedings on Oct. 23, 1995, at 36–43 (restating conclusion).

**7.** The significance of this factor with respect to one of the federal proceedings is questionable.

On May 4, 1994, Magistrate Judge Joan H. Lefkow recommended that District Judge Lindberg dismiss the proceeding under Rule 19(b) of the Federal Rules of Civil Procedure, for failure to join indispensable parties. *Eljer Indus., Inc. v. Aetna Casualty & Sur. Co.*, 1994 U.S.Dist. LEXIS 6167 (N.D.Ill.1994). On June 14, 1994, Brass moved to add the defendants that Judge Lefkow found indispensable. Conceding that "diversity of citizenship is wanting between Eljer and some or all of the additional parties," Brass noted that it recently filed for bankruptcy and that the district court could "now exercise jurisdiction over the additional defendants pursuant to 28 U.S.C. § 1334." On June 22, 1994, without ruling on Judge Lefkow's recommendation of dismissal or

On balance, given the predominance of unresolved state law issues, this court affirms Judge Barliant's decision to invoke permissive abstention as to all six adversary proceedings.

### Conclusion

For the reasons stated above, the court affirms the orders of the bankruptcy court abstaining from hearing the six proceedings on appeal (nos. 95 C 67, 95 C 68, 95 C 69, 95 C 70, 95 C 483, and 95 C 484); declining to transfer the six proceedings to the United States District Court for the Eastern District of Texas; and remanding to Illinois state court four of the six proceedings (nos. 95 C 67, 95 C 68, 95 C 69, and 95 C 70).