Donald P. Metzger COOK, Plaintiff,

v.

Mason & Jewel COOK, Defendants.

Adversary No. 97–2017.

United States Bankruptcy Court,
E.D. Michigan,
Northern Division.

Oct. 9, 1997.

H. Dale Cubitt, Bad Axe, MI, for Plaintiff.

James R. Abbey, Caro, MI, for Defendants.

### AMENDED OPINION REGARDING DEFENDANTS' MOTION TO TRANSFER AND PLAINTIFF'S MOTION FOR REMAND

ARTHUR J. SPECTOR, Bankruptcy Judge.

Once upon a time, Donald Cook owned a farm in Tuscola County, Michigan. Cass City State Bank held a mortgage on this property. Cook defaulted on the loan which the mortgage secured and, consequently, deeded the property to the Bank. In 1988,

the Bank sold the property to Mason C. Cook (Cook's uncle) and Mason's wife, Jewel (the "Cooks"). Donald Cook, who claims to have never vacated the property, contributed $4,000 toward the $10,000 down payment made by the Cooks to the Bank. The Cooks signed a note for the balance of the $55,-000.00 purchase price, and are obligated to make monthly payments of $511.47. They granted the Bank a mortgage on the farm to secure this obligation.

In May or June of 1992, the Cooks—who are California residents—filed a petition for chapter 11 bankruptcy relief in the Northern District of that state. Approximately two years later, on June 3, 1994, the California bankruptcy court entered an order confirming their plan of reorganization. This plan includes provisions specifying the treatment of the Bank's claim against the Cooks.

On January 28, 1997, Donald Cook ("Plaintiff") sued the Cooks in Tuscola County Circuit Court. He alleged in his complaint that he, rather than the Cooks, had been making the monthly mortgage payments to the Bank, *see* Complaint at ¶¶ 7 and 8, and "[t]hat it has always been the understanding between the parties that when Plaintiff had reduced the mortgage substantially, the property would be deeded back to him." *Id.* at ¶ 12. He asked that the "Court enter [an] ... order requiring Defendants to re-convey the property to Plaintiff, together with ... certain personal property." *Id.* at p. 3.

The Cooks conceded that the Plaintiff has been making regular payments of $511.47 each month to the Bank. First Amended Answer at ¶ 8. They further asserted, however, that the Plaintiff is renting the farm from them, and that the foregoing figure simply represents the rental rate to which the parties agreed. *See id.* at ¶¶ 7 and 8. The Cooks also claimed that the parties

reached "no agreement concerning any personal property." *Id.* at ¶ 6. As an affirmative defense, they invoked "the doctrines of Res Judicata or Collateral Estoppel in that ... all issues of ownership of ... [the farm] were determined in the bankruptcy proceeding and that said bankruptcy proceeding designated no ownership interest of the [P]laintiff." *Id.* at p. 3.

The Cooks' motion to reopen their bankruptcy case was granted on February 20, 1997. One week later, they removed the Plaintiff's action to this Court. In doing so, their ultimate objective was to obtain "an order transferring venue ... to the United States Bankruptcy Court, Northern District of California, where the original Chapter 11 Bankruptcy was filed." Notice of Removal at ¶ 5(g).

True to their word, the Cooks filed a motion to transfer this case to the California bankruptcy court. But before that motion was filed, the Plaintiff filed a motion of his own, asking that the case be remanded to Tuscola County Circuit Court. Not surprisingly, each party opposes the other's motion. For the reasons which follow, the Court will reserve decision.

### Discussion

■ The notice of removal does not specify the section under which the Cooks removed the suit to federal court. However, in court the Cooks confirmed that they removed this case pursuant to 28 U.S.C. § 1452. Subparagraph (a) of that statute provides that "(a) party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a).[1]

---

**1.** Section 1452(a) provides for removal "to the district court." But in this case the matter would then be referred to the bankruptcy judges as a matter of course. *See* E.D. Mich. LR 150.1(a)(1); *see generally Hillyard Farms v. White County Bank*, 52 B.R. 1015, 1019 (S.D.Ill.1985) ("If an order of automatic reference has been entered by the district court pursuant to the authority granted by [28 U.S.C.] § 157(a), ... [it] will perforce cover removed actions, [and] the action will be automatically referred to the bank-

ruptcy judge.") (quoting *Collier on Bankruptcy*, ¶ 3.01, at 3–54 (15th ed.1985)). So while the Defendants may have made a technical error in removing the action to this Court, that is a mistake which deserves to be ignored. *See, e.g., In re Norrell*, 198 B.R. 987, 992 n. 3 (Bankr. N.D.Ala.1996) ("[W]here all bankruptcy matters are referred by the district court to the bankruptcy court by a general order of reference, ... removal applications are properly filed in the bankruptcy court."); *see also, e.g., Brizzolara v.*

Section 1452 also provides that a properly removed action may nevertheless "be remand[ed] ... on any equitable ground." 28 U.S.C. § 1452(b). The Plaintiff's motion to remand is based on this provision. *See* Brief in Support of Motion to Remand at p. 3.[2] Before reaching that question, however, the Court must decide whether the removal was in fact proper. *See Pacor, Inc. v. Higgins,* 743 F.2d 984, 993 (3d Cir.1984) ("If subsection (a) [of § 1478—the pre–1984 analogue of § 1452] does not permit the removal, then subsection (b) never comes into play....").

■ As indicated, the applicability of § 1452(a) turns on whether the matter in question falls within the scope of § 1334. The latter provision states in pertinent part that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). An action is "related to [a] case[] under title 11" if "the outcome of that [action] ... could conceivably have any effect on the estate being administered in bankruptcy." *In re Dow Corning Corp.,* 86 F.3d 482, 489 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 718, 136 L.Ed.2d 636 (1997) (citation omitted).

The Plaintiff's contention that he is the rightful owner of the farm would seem to fall within the expansive reach of this definition, and the Plaintiff did not argue otherwise. It is therefore safe to assume that there is at least "related to" jurisdiction under § 1334.

But that doesn't necessarily end the matter. The Cooks removed the state-court lawsuit after they reopened their bankruptcy case. Arguably, then, jurisdiction under § 1334 rests with what we will call the "forum" bankruptcy court—i.e., the one in which the bankruptcy case is pending. *Compare* 28 U.S.C. § 1452(a) (permitting removal to the district court "if *such district court* has jurisdiction" (emphasis added)) *with* 28 U.S.C. § 1334(e) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate."). If that argument is accepted, it follows that removal was improper. That, in turn, would mean that remand is mandatory. *See In re National Developers, Inc.,* 803 F.2d 616, 620 (11th Cir.1986) ("[T]he Bankruptcy Court ... had no jurisdiction over the removed ... action; therefore, the district court erred in denying appellants' motion to remand."); *Pacor,* 743 F.2d at 996 ("There being no federal

*Fisher Pen Co.,* 158 B.R. 761, 767 (Bankr.N.D.Ill. 1993) ("Since bankruptcy judges collectively comprise a unit of the District Court and are judicial officers of that court who are assigned authority over bankruptcy matters by District Court orders of reference, cases may be removed to them, and such cases are considered to have been removed to a unit of the District Court."); *In re Tandem Enters.,* 124 B.R. 283, 284 n. 2 (Bankr.N.D.Ill.1991) ("A case is removed to the district court when it is removed to a unit thereof—i.e., the bankruptcy court."); *In re Boyer,* 108 B.R. 19, 24 (Bankr.N.D.N.Y.1988); *In re North American Funding Corp.,* 64 B.R. 795, 796 (Bankr.S.D.Tex.1986).

2. In this section of his brief, the Plaintiff also made passing reference to 28 U.S.C. § 1447, subparagraph (c) of which relates to motions to remand a case that has been removed pursuant to the "general" removal statute—28 U.S.C. § 1441. At the hearing on these motions, the Court inquired of the Plaintiff's counsel as to precisely which section the Cooks relied upon when they removed the case to federal court. Counsel confirmed that the removal was based on 28 U.S.C. § 1452, not § 1447. Therefore, the

Court will not address arguments relating to § 1447.

The Plaintiff also made a somewhat cryptic allusion to 28 U.S.C. § 1334(c)(2), a provision which specifies the circumstances under which this Court would be required to "abstain from hearing" this matter. *See* Plaintiff's Brief in Support of Motion to Remand at p. 4. We presume the Plaintiff is simply using this statute to buttress his remand argument, rather than contending that this case calls for abstention. *Cf. Seale v. Owens,* 134 B.R. 181, 184–85 (E.D.La. 1991) ("[T]here is a debate in the courts whether abstention, either mandatory or discretionary, may be used to return a case to state court. The debate revolves around a conceptual problem: how can abstention apply after a case has been removed if, conceptually, a state court claim is no longer pending that can go forward while the federal court stays or suspends its jurisdiction? This rather metaphysical but real question causes the inquiry to center principally on remand rather than abstention. Remand seems the theory which rests on firmer theoretical ground, although some abstention doctrine is at work as well." (citation omitted)).

jurisdiction, the district court had no alternative but to remand the . . . action to the state court."); *In re S & K Air Power of Florida, Inc.,* 166 B.R. 193, 195 (Bankr.S.D.Fla.1994) ("Because this action was untimely removed and was removed to the wrong district, this Court is without jurisdiction to hear this action. Therefore, this action must be remanded to the Circuit Court.").

There is a fair amount of direct or indirect support for the conclusion that § 1334(e) in effect bars the Cooks from invoking § 1452(a). *See In re Coleman American Companies,* 8 B.R. 384, 387–89 (Bankr. D.Kan.1981) (holding that a creditor violated the automatic stay by seeking relief therefrom in a non-forum bankruptcy court, based in large part on the statutory provision which is now codified as § 1334(e)); *In re Stamm v. Rapco Foam, Inc.,* 21 B.R. 715, 721 (Bankr. W.D.Pa.1982) (favorably citing *Coleman, supra* ); 1 Norton Bankruptcy Law and Practice 2d § 4:42 ("Section § [sic] 1334(d) [now § 1334(e)] attempts to resolve not only jurisdictional disputes between bankruptcy and state courts, but also disputes which may arise among the districts. By use of the singular form, 'District Court,' Congress attempted to give significance to the exclusive jurisdiction of the particular District Court in which a case is commenced or is pending."); [3] *cf. In re Alabama Fuel Sales Co.,* 45 B.R. 365, 368 (N.D.Ala.1985) ("[T]he statutory language [in § 1334] was intended to provide jurisdiction . . . even after the confirmation of the plan under Chapter 11, so long as the case is still technically pending."); *Wes–Flo v. Wilson Freight Co.,* 13 B.R. 617, 620–21 (Bankr.S.D.Ohio 1981) ("[T]he court of exclusive, original jurisdiction must determine in which venue the case must be tried, to meet the convenience of the parties standard. Until such a determination, even though the case has been properly removed to the court of the district wherein originally filed, the automatic stay of the original court remains in effect as to the parties pending determination of the venue question. Only the Bankruptcy Court for the Southern District of

New York should have jurisdiction to remove its own stay. The stay remains unaltered, except as to the statutory right to removal. . . . [C]ontrol of the case must be to the bankruptcy court with exclusive jurisdiction with a timely request directed to that court for either a remand or a change of venue. . . .").

But there are also cases which reject this reasoning. *See United States Brass Corp. v. California Union Ins. Co.,* 198 B.R. 940, 944 (N.D.Ill.1996), *aff'd in part,* 110 F.3d 1261 (7th Cir.1997); *In re Engra, Inc.,* 86 B.R. 890 (S.D.Tex.1988); *In re Continental Air Lines, Inc.,* 61 B.R. 758, 766 n. 14 and accompanying text (S.D.Tex.1986) ("The Kansas decision [in *Coleman, supra* ] . . . is patently incorrect.") (quoting 1 Collier on Bankruptcy ¶ 3.02 n.19 (15th ed.1985)); *In re Coleman American Companies,* 6 B.R. 251, 253–54 (Bankr.D.Colo.1980).

Unfortunately, neither of the parties even identified this issue, much less briefed it. We will therefore give them the opportunity to do so before making our ruling.

■ This brings us to another issue. Can the Court enter a ruling on the Plaintiff's motion, or is it limited to "submit[ting] proposed findings of fact and conclusions of law to the district court"? 28 U.S.C. § 157(c)(1). If we're dealing here with a "core proceeding," then the Court can "rule," rather than simply "propose." *See* 28 U.S.C. § 157(b). Such a proceeding has been described as one which, "by its nature, could arise only in the context of a bankruptcy case." *Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir.1990) (citation omitted). *Cf. Sanders Confectionery Products v. Heller Financial, Inc.,* 973 F.2d 474, 483 (6th Cir.), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993) (Core proceedings concern rights "created by federal bankruptcy law or . . . which could not exist outside of the bankruptcy.").

By definition, of course, a remand motion under § 1452 can only be made in the bankruptcy context. Thus it could be argued that

---

**3.** In support of the last sentence quoted from Norton, the treatise cited *In re Engra, Inc.,* 86 B.R. 890 (S.D.Tex.1988). That is either a miscitation, or we misunderstand Norton's point.

*See id.* at 893 (declining to interpret § 1452 as precluding removal to a non-forum bankruptcy court).

consideration of such a motion is a core proceeding. There are cases which support this view. *See Scherer v. Carroll,* 150 B.R. 549, 552 (D.Vt.1993); *In re Borelli,* 132 B.R. 648, 650 (N.D.Cal.1991); *In re Clark,* 127 B.R. 351, 352 (W.D.N.C.1991).

On the other hand, several opinions—including one issued by the Sixth Circuit—hold or suggest that § 1452 remand motions are noncore. *See Boone Coal & Timber Co. v. Polan,* 787 F.2d 1056, 1059 n. 2 and accompanying text (6th Cir.1986); *In re Global Int'l Airways Corp.,* 75 B.R. 804, 806 (W.D.Mo. 1987); *Thomasson v. AmSouth Bank,* 59 B.R. 997, 1008 (N.D.Ala.1986). Since such motions are procedural in nature, this result is consistent with the Sixth Circuit's characterization of a core proceeding as one which "invokes a substantive right." *Sanders,* 973 F.2d at 483.

The parties did not address this issue in their motions or briefs. But, presumably at least in part to avoid the need for further briefing, they stipulated in court that, even if the matter was non-core, the Bankruptcy Court could "determine" it by issuing an order instead of a recommendation. So for this case at least, the issue is moot.

As mentioned, the Plaintiff's motion need only be addressed on the merits if removal was proper in the first instance. But of course that procedural issue might be decided in the Defendants' favor. And even if it is not, it might still be worth considering the "substance" of the motion to see if it provides an alternative ground for remand. We therefore now turn to the kinds of factors considered by courts in determining whether to remand a case pursuant to § 1452(b).

■ In alluding to "equitable" grounds, the better view is that § 1452(b) does not represent an attempt by Congress to resuscitate the moribund distinction between law and equity. Rather, the quoted term is used in its broader sense, encompassing that which is "fair[]" or "reasonable." Random House College Dictionary (rev. ed.1980). *See Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116 S.Ct. 494, 498–500, 133 L.Ed.2d 461, 468–70 (1995) (Ginsburg, J., concurring); *Hernandez v. Brakegate, Ltd.,* 942 F.2d 1223, 1226 (7th Cir.1991) ("In 1978, when Congress enacted the predecessor to § 1452, there was no law-equity distinction. 'Equitable' in § 1452(b) makes more sense if it means 'appropriate' ").

■ As one might expect, courts have dutifully formulated lists of factors to be taken into account in deciding whether remand is equitable. These factors include:

1) forum non conveniens; 2) a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court; 3) a holding that a state court is better able to respond to questions involving state law; 4) expertise of the particular court; 5) duplicative and uneconomic effort of judicial resources in two forums; 6) prejudice to the involuntarily removed parties; 7) comity considerations; and 8) a lessened possibility of an inconsistent result.

*McCratic v. Bristol–Myers Squibb & Co.,* 183 B.R. 113, 115 (N.D.Tex.1995). *See also, e.g., Thomasson,* 59 B.R. at 1008 n. 9.

■ With respect to the first factor, "[t]he doctrine of forum non conveniens ... [holds that i]f the more convenient forum is another ... court, ... [then] a suit brought in a proper federal venue can be dismissed." 15 Wright Miller & Cooper, Federal Practice & Procedure, Jurisdiction 2d § 3828. That treatise quoted a Supreme Court decision in explaining "the relevant factors" that are to be used "as a guide in those cases to which" the doctrine applies:

An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex,"

"harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

Of the various factors enumerated above, (2) and (5) appear to be inapplicable, and the eighth factor is seemingly neutral. Factor (3) theoretically weighs in the Plaintiff's favor, particularly if the case is ultimately transferred to California rather than retained by this Court.

As explained by the Cooks, however, resolution of this case does not exclusively, or even primarily, entail state law. They contended that the Plaintiff's "claims are barred by the doctrines of res judicata of [sic] collateral estoppel based upon the filings and completion of the Chapter 11 Bankruptcy." Brief in Support of Answer to Motion to Remand at p. 2. These allegations, in turn, will raise the question of "whether [the Plaintiff] ... [was entitled] to notice ... of the bankruptcy proceeding, and if so whether sufficient notice was given." *Id.* Factor (4), then, weighs in the Cooks' favor.

In this context, the notion of "comity" boils down to the principle that federal courts should show deference in matters of state law. *See generally, e.g., In re Ivory,* 146 B.R. 27, 28 (Bankr.D.Or.1992), *aff'd,* 70 F.3d 73 (9th Cir.1995). The principle of comity generally favors remand. *See, e.g., In re Walsh,* 79 B.R. 28, 29 (D.Nev.1987) ("In that the case includes state law issues which may bear on state policy concerns, comity is a consideration weighing in favor of remand."); *In re Roddam,* 193 B.R. 971, 976 (Bankr. N.D.Ala.1996) ("Together, sections 1452(b) and 1334(c) strongly evince a congressional policy that, absent countervailing circumstance, the trial of state law created issues and rights should be allowed to proceed in state court...."). But as the Cooks suggested, the fact that the state-court action was only recently commenced should allay concerns that retention of this case would demonstrate a lack of "deference" vis à vis the state court. *See* Brief in Support of Answer to Motion to Remand at p. 3 ("[N]o orders have issued from the Tuscola County Circuit Court regarding this action. The court has yet to hold any type of hearing or pretrial in this matter. Prior to the removal of the action, there had simply been a complaint filed and a summons issued."). *Cf. Williams v. Shell Oil Co.,* 169 B.R. 684, 693 (S.D.Cal.1994) (Indicating that "[c]onsiderations of comity support remand" inasmuch as "the state court has devoted significant resources to the coordination and adjudication of the ... cases"); *Lone Star Indus., Inc. v. Liberty Mutual Ins.,* 131 B.R. 269, 274 (D.Del.1991) ("As a matter of comity, remand would display a proper respect for ... Judge Bifferato's prior investment of time and efforts in managing the case."). And, of course, if the decision turns on the federal policies of res judicata and due process, there will be little room for state law/policy concerns. Therefore, in practice in this case, factor (3) is neutral.

The force of factor (6) varies depending on whether the case, should it not be remanded, is tried here or in California. If tried in this Court, the incremental inconvenience to the Plaintiff would of course be minimal. If the case is transferred to California, on the other hand, the Plaintiff will likely be severely

prejudiced. *See* Plaintiff's Motion to Remand at ¶ 7 ("[I]t would be devastating to Plaintiff and practically impossible for him to pursue his cause of action if this court transferred the matter to the California Bankruptcy Court. . . .").

Similarly, the strength of the case for invoking the doctrine of forum non conveniens turns largely on which bankruptcy court would decide the matter. If the action stays here, then factor (1) is essentially neutral. If it is to be tried in California, then that factor points in favor of the Plaintiff, if only because the inconvenience to him would be roughly as great as the inconvenience that the Cooks would suffer if the case were to remain in Michigan. *See* 15 Wright Miller & Cooper, *supra*, § 3828, "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed". This is particularly true if, as the Plaintiff obliquely suggests, the proper resolution of this dispute would require the Bank's participation. *See* Answer to Defendants' Motion to Transfer at ¶ 7(b) (Noting that "the bank which holds the mortgage on the property is located in Tuscola County, Michigan").

The upshot is that if this Court were to retain jurisdiction, rather than transferring it to California, the Cooks probably come out ahead when the various factors are tallied up—though it may be a close call. If the analysis assumes transfer to California, then it would appear that equity favors the Plaintiff. After all, the only "non-Michigan" element at play here is the nominal purchaser of the property: the location of the seller, real estate, transaction, and alleged purchaser are all the same—i.e., Tuscola County. In summary, then, it cannot be determined at this point that equity favors remand. Accordingly, until the efficacy of the removal is determined, the Court expresses no opinion on the so-called "merits" of the remand issue.

Turning to the Cooks' motion to transfer the lawsuit to the Bankruptcy Court for the Northern District of California, we are hard-pressed to do so given that the Cooks have never identified a statute or a rule which requires or permits such an action. The Cooks cited only F.R.Bankr.P. 1014(a)(1), which plainly does not apply because it refers to "cases" as opposed to "proceedings." A "case" is a term of art in bankruptcy and "refers to the general administrative proceedings in bankruptcy—that is, the actual bankruptcy case filed under the Bankruptcy Code." *Phar–Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1232 n. 5 (3d Cir.1994). This matter before the Court is a "proceeding," which is "a subsidiary lawsuit within the larger framework of a bankruptcy case." *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1140 (1st Cir.1992). This is not to say that there is no statute or rule which provides for change of venue.

> However, the Court is neither an investigative body nor an academic institution; it is not appropriate or practical for us to conduct extensive research on this subject and draw our own conclusions in the absence of input from those parties who have a stake in the outcome. Courts decide cases, not issues. It is incumbent upon the parties in interest—particularly the moving party—to provide us with legal arguments to support their respective positions with regard to the action which they believe the Court should take. Our function is to evaluate the legal arguments proposed by the parties, not to make those arguments for them.

*In re Campbell*, 58 B.R. 506, 507–08 (Bankr. E.D.Mich.1986). Therefore, the Cooks' motion to transfer this lawsuit to the forum bankruptcy court will be held in abeyance for further argument after new briefs are submitted.

## Conclusion

Accordingly, the parties shall submit new briefs by **June 30, 1997**, addressing whether the Cooks' removal of the Plaintiff's lawsuit to the Bankruptcy Court for the Eastern District of Michigan was proper. Furthermore, if the Cooks intend to further prosecute their motion to transfer the proceeding to the Northern District of California, they shall file a brief by **June 30, 1997** identifying the authority of the Court to do so.